**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

Civil Action No. 1:20-cv-500- NYW-RBJ

DEBRA KURTZ, individually,
and as representative of a Class of Participants
and Beneficiaries, on Behalf
of the Vail Resorts 401(k) Retirement Plan;

       Plaintiff,

v.

THE VAIL CORPORATION,

       Defendant

_____

**AMENDED CLASS ACTION COMPLAINT**
**FOR CLAIMS UNDER 29 U.S.C. § 1132(a)(2)**
_____

Plaintiff Debra Kurtz, individually and as representative of a Class of Participants

and Beneficiaries on Behalf of the Vail Resorts 401(k) Retirement Plan, hereby asserts

to the best of her knowledge, information and belief, formed after an inquiry reasonable

under the circumstances, the following class claims against defendant The Vail

Corporation:

## **INTRODUCTION**

1.     ERISA's "essential remedial purpose" is "to protect the beneficiaries of

private pension plans." *Nachwalter v. Christie*, 805 F.2d 956, 962 (11th Cir. 1986). *See*

*also Sweda v. Univ. of Pa.*, 923 F.3d 320, 327 (3d Cir. 2019) ("ERISA furthers 'the

national public interest in safeguarding anticipated employee benefits' upon which individuals' livelihoods depend.").[1] To advance that essential purpose, ERISA places fiduciary duties on persons responsible for administering pension plans that are the "highest known to law." *ITPE Pension Fund v. Hall*, 334 F.3d 1011, 1013 (11th Cir. 2003). ERISA's duty of loyalty requires a fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. §1104(a)(1)(A). Further, ERISA's duty of prudence requires a fiduciary to discharge his duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).

     **2.**     The law is settled that ERISA fiduciaries have a duty to evaluate fees and expenses when selecting investments *as well as* a continuing duty to monitor fees and expenses of selected investments and remove imprudent ones. *See Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1828 (2015); *see also e.g.,* 29 U.S.C. §1104(a)(1)(A) (fiduciary duty includes "defraying reasonable expenses of administering the plan"); 29 C.F.R. § 2550.404a-1(b)(i) (ERISA fiduciary must give "appropriate consideration to those facts and circumstances" that "are relevant to the particular investment"). It is for good reason that ERISA requires fiduciaries to be cost-conscious:

---

[1] Unless indicated otherwise, cited and quoted cases are omitted.

> Expenses, such as management or administrative fees, can sometimes
> significantly reduce the value of an account in a defined-contribution plan,"
> *Tibble,* 135 S. Ct. at 1826, by decreasing its immediate value, and by
> depriving the participant of the prospective value of funds that would have
> continued to grow if not taken out in fees.

*Sweda,* 923 F.3d at 320, 328.

3.      Defendant The Vail Corporation is an ERISA fiduciary as it exercises discretionary authority or discretionary control over the 401(k) defined contribution pension plan – known as the Vail Resorts 401(k) Retirement Plan (the "Plan") - that it sponsors and provides to its employees**.**

4.      Plaintiff alleges that during the putative class period, Vail, as fiduciary of the Plan, as that term is defined under ERISA, 29 U.S.C. § 1002(21)(A), breached the duties it owed to the Plan, to Plaintiff, and to other participants of the Plan by, among other things, (1) failing to objectively and adequately review the Plan's investment portfolio with due care to ensure that each investment option was prudent, in terms of cost and (2) maintaining certain funds in the Plan despite the availability of identical or similar investment options with lower costs, and/or better performance histories.

5.      For at least 18 of the 27 mutual fund share classes available within the Plan, the same issuer offered a different share class from that selected by the Plan that charged lower fees, and consistently achieved higher returns; the Plan, however, inexplicably failed to select these lower fee-charging and better-return producing share classes. The Plan also offered actively managed funds to Plan participants, each of which featured consistently higher costs, and usually lower rates of return, than index funds that offered similar investments.

**6.**     These investment options and unreasonable fees cannot be justified, which confirms Vail's failure to monitor and improve investment options.  Prudent fiduciaries of 401(k) plans continuously monitor fees against applicable benchmarks and peer groups to identify unreasonable and unjustifiable fees.

**7.**     To remedy, Plaintiff brings this action on behalf of the Plan under 29 U.S.C. § 1132(a)(2) to enforce Vail's liability under 29 U.S.C. § 1109(a) to make good to the Plan all losses resulting from Vail's breaches of fiduciary duty.

## JURISDICTION AND VENUE

**8.**     This Court has jurisdiction in this ERISA matter via 28 U.S.C. § 1331.

**9.**     Venue is appropriate in this district because the Defendant's headquarters are located within this judicial district within the meaning of 29 U.S.C. § 1132(e)(2).

**10.**     In conformity with 29 U.S.C. §1132(h), Plaintiff served the original Complaint by certified mail on the Secretary of Labor and the Secretary of the Treasury.

## PARTIES

**11.**     Plaintiff Debra Kurtz lives in and is a citizen of Ossining, New York, and during the Class period, participated in the Plan under 29 U.S.C. § 1002(7).

**12.**     Plaintiff has standing to bring this action on behalf of the Plan because she participated in the Plan and was injured by Vail's unlawful conduct. Plaintiff is entitled to receive benefits in the amount of the difference between the value of her

account as of the time her accounts were distributed, and what her account is or would have been worth, but for Vail's breaches of fiduciary duty as described herein.

**13.**     The Plaintiff and all participants in the Plan suffered financial harm as a result of the imprudent or unreasonable investment and fee options in the Plan. Vail's selection and retention of these options resulted in higher fees than the Plan and its participants and beneficiaries should have paid, as well as poorer net investment performance. All participants and the Plan continue to be harmed by the ongoing inclusion of these investment options.

**14.**     The Vail Corporation, which does business as Vail Associates, Inc., ("Vail") is a Colorado corporation with its principal headquarters located at 390 Interlocken Crescent, Broomfield, Colorado. Vail is a citizen of the state of Colorado. In this Complaint, "Vail" refers to the named defendant and all parent, subsidiary, related, predecessor, and successor entities to which these allegations pertain. Vail is the Plan sponsor of the Vail Resorts 401(k) Retirement Plan.

**15.**     Vail is a fiduciary with ultimate authority and responsibility for the control, management, and administration of the Plan in accordance with 29 U.S.C. § 1102(a). Vail has exclusive responsibility and complete discretionary authority to control the operation, management, and administration of the Plan, with all powers necessary to properly carry out such responsibilities.

**16.**     The Plan is a "defined contribution" pension plan under 29 U.S.C. § 1102(2)(A) and 1002(34), meaning that Vail's contribution to the payment of the Plan costs is guaranteed but the pension benefits are not. In a defined contribution plan, the

value of participants' investments is "determined by the market performance of employee and employer contributions, less expenses." *Tibble*, 135 S. Ct. at 1826. Thus, the employer has no incentive to keep costs low or to closely monitor the Plan to ensure every investment remains prudent, because all risks related to high fees and poorly performing investments are borne by the participants.

17.    The Plan had at least $170 million in assets entrusted to the care of the Plan's fiduciaries at all relevant times. The Plan had substantial bargaining power regarding the fees and expenses that were charged against participants' investments. Vail, however, did not try to reduce the Plan's expenses or exercise appropriate judgment to monitor each investment option to ensure it was a prudent choice.

## ERISA's FIDUCIARY STANDARDS

18.    ERISA imposes strict fiduciary standards of duty and loyalty and prudence on Vail as a Plan fiduciary. 29 U.S.C. § 1104(a)(1) provides in relevant part:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and –
> (A) for the exclusive purpose of:
>     (i) providing benefits to participants and their beneficiaries; and
>     (ii) defraying reasonable expenses of administering the plan; [and]
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

19.    With certain exceptions not relevant here, 29 U.S.C. § 1103(c)(1) provides in relevant part:

> the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to

participants in the plan and their beneficiaries and defraying
reasonable expenses of administering the plan.

20.    29 U.S.C. § 1109 provides in relevant part:

Any person who is a fiduciary with respect to a plan who breaches
any of the responsibilities, obligations, or duties imposed upon
fiduciaries by this subchapter shall be personally liable to make
good to such plan any losses to the plan resulting from each such
breach, and to restore to such plan any profits of such fiduciary
which have been made through use of assets of the plan by the
fiduciary, and shall be subject to such other equitable or remedial
relief as the court may deem appropriate, including removal of such
fiduciary.

21.    Under ERISA, fiduciaries that exercise any authority or control over plan

assets, including the selection of plan investments and service providers, must act

prudently and for the exclusive benefit of participants in the plan, and not for the benefit

of third parties including service providers to the plan such as recordkeepers and those

who provide investment products. Fiduciaries must ensure that the amount of fees paid

to those service providers is no more than reasonable. DOL Adv. Op. 97-15A; DOL Adv.

Op. 97-16A; *see also* 29 U.S.C. §1103(c)(1) (plan assets "shall be held for the exclusive

purposes of providing benefits to participants in the plan and their beneficiaries and

defraying reasonable expenses of administering the plan").

22.    "[T]he duty to conduct an independent investigation into the merits of a

particular investment" is "the most basic of ERISA's investment fiduciary duties." *In re

Unisys Savings Plan Litig.,* 74 F.3d 420, 435 (3d Cir. 1996); *Katsaros v. Cody*, 744 F.2d

270, 279 (2d Cir. 1984) (fiduciaries must use "the appropriate methods to investigate

the merits" of plan investments). Fiduciaries must "initially determine, and continue to

monitor, the prudence of each investment option available to plan participants." *DiFelice*

7

*v. U.S. Airways, Inc.*, 497 F.3d 410, 423 (4th Cir. 2007); (emphasis original); *see also* 29 C.F.R. § 2550.404a-1; DOL Adv. Opinion 98-04A; DOL Adv. Opinion 88-16A. Thus, a defined contribution plan fiduciary cannot "insulate itself from liability by the simple expedient of including a very large number of investment alternatives in its portfolio and then shifting to the participants the responsibility for choosing among them." *Hecker v. Deere & Co.*, 569 F.3d 708, 711 (7th Cir. 2009). Fiduciaries have "a continuing duty to monitor investments and remove imprudent ones[.]" *Tibble,* 135 S. Ct. at 1828-29.

23.     "Congress intended the term 'fiduciary' to be construed broadly." *Patten v. N. Trust Co.*, 703 F.Supp.2d 799, 808 (N.D. Ill. 2010).  "Although Plan documents may expressly name fiduciaries for certain purposes, a person may also be considered a 'functional fiduciary' if he falls within ERISA's definition of the term. "

24.     "Wasting beneficiaries' money is imprudent. In devising and implementing strategies for the investment and management of trust assets, trustees are obligated to minimize costs." Uniform Prudent Investor Act § 7.

25.     29 U.S.C. § 1132(a)(2) authorizes plan participants to bring a civil action for appropriate relief under 29 U.S.C. § 1109.

## THE PLAN

26.     At least since 2013, the Vail Plan had more than 5,000 participants and assets exceeding $170 million. At the end of 2018, the Plan had 8,276 participants with account balances, and $309,822,304 in assets. The Vail Plan offered about 27 different investment choices to its participants.

27.     At all relevant times, the Vail Plan's fees were excessive when compared with other comparable 401k plans offered by other sponsors that had similar numbers of plan participants, and similar amounts of money under management.  The excessive fees led to lower net returns than participants in comparable 401k plans enjoyed.

28.     During the class period, Vail breached its duties owed to the Plan, to Plaintiff and to other Plan participants, by (1) failing to objectively and adequately review the Plan's investment portfolio with due care to ensure that each investment option was prudent, in terms of cost, and (2) maintaining certain funds in the Plan despite the availability of identical or similar investment options with lower costs and/or better performance histories. Vail failed to use the lowest cost share class for many of the mutual funds within the Plan.

29.     Vail's mismanagement of the Plan breached the fiduciary duties of prudence and loyalty in violation of 29 U.S.C. § 1104, to the detriment of Plan participants and beneficiaries.

## A.     *Excessive Plan Expenses*

30.     There are commercially available programs commonly used by financial advisors and plan fiduciaries to analyze plans' performance, comparative costs and other key indicators.

31.      The commercially available programs require validated information because financial information submitted to the federal government is often incomplete or contains errors. The program used for the analysis below contains validated financial information from more than 55,000 financial plans of all types. The benchmarking

analysis is of the type employed by fiduciaries and financial advisors to determine the productivity and efficiency of financial programs and is appropriately used here.

32.      A benchmarking analysis of the type often employed by fiduciaries and financial advisors shows that the fees charged to Plan participants is greater than over 90 percent of its comparator fees when fees are calculated as cost per participant, or as a percent of total assets.  In 2017, the Plan's expenses amounted to .63% of assets under management, or $271 per participant.  The Plan's expenses are well above those of the mean among 19 comparator plans with 5-10,000 participants of $179 per participant, and .2% of assets under management.  Similarly, among a peer group of 21 Plans with an asset range between $250 million and $500 million, the mean expenses were .43% of assets under management, which again compared unfavorably with the Plan's fees representing .63% of assets. Comparisons in prior years show similar variances between the Vail Plan and comparator groups, with the Vail Plan always more costly to participants.

      **B.**    ***The Plan Paid Unreasonably High Fees for Share Classes When Less Expensive and More Productive Share Class Investments Were Available***

33.      Many mutual funds offer multiple classes of shares in a single mutual fund that are targeted at different investors. Generally, more expensive shares are targeted at small investors with less bargaining power, while lower cost shares are targeted at larger investors with greater assets. There is no material difference between share classes other than costs – the funds hold identical investments and have the same manager.

**34.** Larger defined contribution plans such as the Plan have sufficient assets to qualify for lower cost share classes. Even when a plan does not meet the investment minimum to qualify for the cheapest available share class, it is well known among institutional investors that mutual fund companies will waive those investment minimums for a larger plan adding the fund in question as an investment alternative.

**35.** Fiduciaries to large defined contribution plans, such as the Plan, can and should use its asset seize and negotiating power to invest in the cheapest share class available. For this reason, prudent plan fiduciaries will search for and select the lowest-priced share class available. "Because the institutional share classes are otherwise identical to the retail share classes, but with lower fees, a prudent fiduciary would know immediately that a switch is necessary. Thus, the manner that is reasonable and appropriate to the particular investment action and strategies involved … would mandate a prudent fiduciary – who indisputably has knowledge of institutional share classes and that such share classes provide identical investments at lower costs – to switch share classes immediately." *Tibble v. Edison Int'l*, 2017 U.S. Dist. LEXIS 130806, *40 (C.D. Cal. Aug. 16, 2017).

**36.** That did not happen here, as the following tables show. The Plan Fees that follow are expressed as a percentage of assets under management, or "expense ratio." For example, if the mutual fund share class deducts 1% of fund assets each year in fees, the fund's expense ratio would be 1%, or 100 basis points (or bps). (One basis point is equal to 1/100th of one percent (or 0.01%). The fees deducted from a mutual fund's assets reduce the value of the shares owned by fund investors. As of December

31, 2018, the Plan offered participants share classes from 27 investment selections in which they could invest.  T. Rowe Price, the issuers of 15 of these investments, offered different share classes that charged lower fees, and had materially better rates of return. The holders of different share classes held the same investments and were subject to the same restrictions concerning deposits and withdrawals. The only publicly disclosed difference between share classes was that the lower-cost share classes were available only to Plans that had larger investments – but in all cases, Vail's Plan, with more than $250 million in assets, was large enough to qualify for the lower cost share class.  For example, the T. Rowe Price Class Share Class I have been open to Plans with aggregate assets greater than $1 million since they were created in 2015, a threshold easily met by the Vail Plan.   The Plan could have, but did not, offer the lower cost share classes to participants.

37.    Vail disclosed in its Forms 5500 that the Plan received rebates of a portion of the investment costs it incurred, which were used to defray a portion of the bookkeeping and advisor costs that it incurred, for the benefit of the Plan.  The savings represented by these rebates did not fully compensate the Plan for the higher costs of the share classes in the Plan,

38.    Data regarding fees in the charts that follow are taken from Morningstar.com as of December 23, 2019.

| Plan Fund and Share Class | Vail's Plan Fee (bps) | Identical Lower Cost Available Share Class | Identical Lower-Cost Share Class Fee (bps) | Plan's Excess (%) |
|---|---|---|---|---|
| T. Rowe Price Retirement 2005 (TRRFX) | 53bps | T. Rowe Price I 2005 I (TRPFX) | 41 bps | **29%** |
| T. Rowe Price Retirement 2010 (TRRAX) | 53 bps | T. Rowe Price I 2010 I (TRPAX) | 40 bps | **32%** |
| T. Rowe Price Retirement 2015 (TRRGX) | 56 bps | T. Rowe Price I 2015 I (TRFGX) | 43 bps | **30%** |
| T. Rowe Price Retirement 2020 (TRRBX) | 59 bps | T. Rowe Price I 2020 I (TRBRX) | 46 bps | **28%** |
| T. Rowe Price Retirement 2025 (TRRHX) | 63 bps | T. Rowe Price I 2025 I (TRPHX) | 50 bps | **26%** |
| T. Rowe Price Retirement 2030 (TRRCX) | 66 bps | T. Rowe Price I 2030 I (TRPCX) | 53 bps | **25%** |
| T. Rowe Price Retirement 2035 (TRRJX) | 70 bps | T. Rowe Price I 2035 I (TRPJX) | 56 bps | **25%** |
| T. Rowe Price Retirement 2040 (TRRDX) | 70 bps | T. Rowe Price I 2040 I (TRPDX) | 58 bps | **21%** |
| T. Rowe Price Retirement 2045 (TRRKX) | 71 bps | T. Rowe Price I 2045 I (TRPKX) | 59 bps | **20%** |
| T. Rowe Price Retirement 2050 (TRRMX) | 72 bps | T. Rowe Price I 2050 I (TRPMX) | 59 bps | **22%** |
| T. Rowe Price Retirement 2055 (TRRNX) | 72 bps | T. Rowe Price I 2055 I (TRPNX) | 59 bps | **22%** |
| T. Rowe Price Equity Income (PRFDX) | 64 bps | T. Rowe Price Equity Income I (REIPX) | 54 bps | **19%** |

| T. Rowe Price Growth Stock (PRGFX) | 66 bps | T. Rowe Price Growth Stock I (PRUFX) | 52 bps | **27%** |
|---|---|---|---|---|
| T. Rowe Price Mid-Cap Growth (RPMGX) | 75 bps | T. Rowe Price Mid-Cap Growth I (RPTIX) | 62 bps | **21%** |
| T. Rowe Price Small-Cap Value (PRSVX) | 85 bps | T. Rowe Price Small-Cap Value I (PRVIX) | 73 bps | **16%** |

39.    The lower cost share classes offered approximately the same savings in earlier years as well.  In all cases, the lower-cost shares had higher 3-year rates of return than the higher-priced shares that Vail offered to Plan participants: Data was taken from Morningstar.com as of May 22, 2020.

| Plan Mutual Fund And Share Class | Vail's 3 Year Annualized Return | Identical Lower-Cost Share Class | 3 Year Annualized Return |
|---|---|---|---|
| T. Rowe Price Retirement 2005 (TRRFX) | 4.00% | T. Rowe Price I 2005 I (TRPFX) | 4.12% |
| T. Rowe Price Retirement 2010 (TRRAX) | 4.16% | T. Rowe Price I 2010 I (TRPAX) | 4.30% |
| T. Rowe Price Retirement 2015 (TRRGX) | 4.35% | T. Rowe Price I 2015 I (TRFGX) | 4.91% |
| T. Rowe Price Retirement 2020 (TRRBX) | 4.60% | T. Rowe Price I 2020 I (TRBRX) | 4.72% |
| T. Rowe Price Retirement 2025 (TRRHX) | 4.73% | T. Rowe Price I 2025 I (TRPHX) | 4.82 |

| T. Rowe Price Retirement 2030 (TRRCX) | 4.83% | T. Rowe Price I 2030 I (TRPCX) | 4.94% |
|---|---|---|---|
| T. Rowe Price Retirement 2035 (TRRJX) | 4.85% | T. Rowe Price I 2035 I (TRPJX) | 4.95% |
| T. Rowe Price Retirement 2040 (TRRDX) | 4.87% | T. Rowe Price I 2040 I (TRPDX) | 4.96% |
| T. Rowe Price Retirement 2045 (TRRKX) | 4.80% | T. Rowe Price I 2045 I (TRPKX) | 4.89% |
| T. Rowe Price Retirement 2050 (TRRMX) | 4.79% | T. Rowe Price I 2050 I (TRPMX) | 4.89% |
| T. Rowe Price Retirement 2055 (TRRNX) | 4.75% | T. Rowe Price I 2055 I (TRPNX) | 4.89% |
| T. Rowe Price Equity Income (PRFDX) | (-.14%) | T. Rowe Price Equity Income I (REIPX) | (-.04%) |
| T. Rowe Price Growth Stock (PRGFX) | 14.80% | T. Rowe Price Growth Stock I (PRUFX) | 15.31% |
| T. Rowe Price Mid-Cap Growth (RPMGX) | 10.00% | T. Rowe Price Mid-Cap Growth I (RPTIX) | 10.14% |
| T. Rowe Price Small-Cap Value (PRSVX) | (-1.28%) | T. Rowe Price Small-Cap Value I (PRVIX) | (-1.17%) |

Similar performance differentials occurred in earlier years also.

**C.**    ***The Plan Failed to Use Lower Cost Passively Managed Funds***

**40.**    As noted above, ERISA is derived from trust law. *Tibble*, 135 S. Ct. at

1828.  Accordingly, appropriate investments for a fiduciary to consider are "suitable

index mutual funds or market indexes (with such adjustments as may be appropriate)."

Restatement (Third) of Trusts § 100 cmt. b(1).

**41.**    While higher-cost mutual funds may outperform a less-expensive option,

such as a passively-managed index fund, over the short term, they rarely do so over a

longer term. *See* Jonnelle Marte, Do Any Mutual Funds Ever Beat the Market? Hardly.

The Washington Post, available at https://www.washingtonpost.com/news/get-

there/wp/2015/03/17/do-any-mutualfunds-ever-beat-the-market-hardly/ (citing a study

by S&P Dow Jones Indices that looked at 2,862 actively managed mutual funds,

focused on the top quartile in performance and found most did not replicate

performance from year to year); *see also* Index funds trounce actively managed funds:

Study, available at http://www.cnbc.com/2015/06/26/index-funds-trounce-actively-

managed-funds-study.html ("long-term data suggests that actively managed funds

"lagged their passive counterparts across nearly all asset classes, especially over the

10-year period from 2004 to 2014.")

**42.**    Funds with high fees on average perform worse than less expensive

funds, even on a pre-fee basis. Javier Gil-Bazo & Pablo Ruiz-Verdu, When Cheaper is

Better: Fee Determination in the Market for Equity Mutual Funds, 67 J. Econ. Behav. &

Org. 871, 873 (2009) (hereinafter "When Cheaper is Better"); see also Jill E. Fisch,

Rethinking the Regulation of Securities Intermediaries, 158 U. Pa. L. Rev. 1961, 1967-

75 (2010) (summarizing numerous studies showing that "the most consistent predictor of a fund's return to investors is the fund's expense ratio").  Courts have recognized that "any fiduciary of a plan such as the Plan in this case can easily insulate itself [from liability] by selecting well-established, low-fee and diversified market index funds." *Brotherston v. Putnam Investments, LLC*, 907 F.3d 17, 39 (1st Cir. 2018).

43.      During the class period, Vail failed to consider materially similar but cheaper alternatives to the Plan's investment options. The chart below demonstrates that the expense ratios of the Plan's investment options were more expensive by multiples of comparable passively-managed and actively-managed alternative funds in the same investment style. A reasonable investigation would have revealed the existence of these lower-cost alternatives. The chart below uses December 23, 2019 expense ratios to demonstrate how much more expensive the Plan's funds were than their alternative fund counterparts.

| Plan Fund | Vail's Plan Fee (bps) | Alternative Available Index Fund | Alternative Index Fund Fee (bps) | Vail's Plan Excess Fees (%) |
|---|---|---|---|---|
| T. Rowe Price Retirement 2005 (TRRFX) | 53bps | Vanguard Target Retirement 2005 (VTOVX) | 13 bps | **308%** |
| T. Rowe Price Retirement 2010 (TRRAX) | 53 bps | Vanguard Target Retirement 2010 (VTENX) | 13 bps | **308%** |
| T. Rowe Price Retirement 2015 (TRRGX) | 56 bps | Vanguard Target Retirement 2015 | 13 bps | **330%** |

|  |  | (VTXVX) |  |  |
|---|---|---|---|---|
| T. Rowe Price Retirement 2020 (TRRBX) | 59 bps | Vanguard Target Retirement 2020 (VFORX) | 14 bps | **321%** |
| T. Rowe Price Retirement 2025 (TRRHX) | 63 bps | Vanguard Target Retirement 2025 (VTTVX) | 13 bps | **385%** |
| T. Rowe Price Retirement 2030 (TRRCX) | 66 bps | Vanguard Target Retirement 2030 (VTHRX) | 14 bps | **371%** |
| T. Rowe Price Retirement 2035 (TRRJX) | 70 bps | Vanguard Target Retirement Income 2035 (VTTHX) | 14 bps | **400%** |
| T. Rowe Price Retirement 2040 (TRRDX) | 70 bps | Vanguard Target Retirement 2040 (VFORX) | 14 bps | **400%** |
| T. Rowe Price Retirement 2045 (TRRKX) | 71 bps | Vanguard Target Retirement 2045 VTIVX | 15 bps | **373%** |
| T. Rowe Price Retirement 2050 (TRRMX) | 72 bps | Vanguard Target Retirement 2050 (VFIVX) | 15 bps | **380%** |
| T. Rowe Price Retirement 2055 (TRRNX) | 72 bps | Vanguard Target Retirement 2055 (VFFVX) | 15 bps | **380%** |

| T. Rowe Price Equity Income (PRFDX) | 64 bps | Vanguard Equity Income Fund Admiral Shares (VEIRX) | 18 bps | **256%** |
|---|---|---|---|---|
| T. Rowe Price Growth Stock (PRGFX) | 66 bps | Vanguard Growth ETF (VUG) | 4 bps | **1550%** |
| T. Rowe Price Mid-Cap Growth (RPMGX) | 75 bps | Vanguard Mid-Cap Growth ETF (VOT) | 7 bps | **971%** |

44.     The above is for illustrative purposes only; the significant fee disparities detailed above existed for all years of the Class Period. The Plan expense ratios were multiples of what they should have been given the bargaining power available to the Plan fiduciaries.

45.     Moreover, the Plan's fiduciaries cannot justify selecting actively managed funds over passively managed ones. As noted above, while higher-cost mutual funds may outperform a less-expensive option such as a passively-managed index fund over the short term, they rarely do so over a longer term. With regard to this action in particular, there is objective evidence that selection of actively managed funds over passively managed ones with materially similar characteristics was unjustified. Comparing the three-year returns of some of the Plan's actively managed funds with those of comparable index (passively managed) funds with lower fees demonstrates that accounting for fees paid, the actively managed funds usually significantly underperformed, and never significantly outperformed, the index funds. The chart below

compares three year returns of several Vail actively managed funds to alternative

indexed funds, as of May 22, 2020:

| Plan Mutual Fund Share Class | Vail's 3 Year Annualized Return | Comparable Lower-Cost Index option | 3 Year Annualized Return |
|---|---|---|---|
| T. Rowe Price Retirement 2015 (TRRGX) | 4.35% | Vanguard Target Retirement 2015 (VTXVX) | 4.91% |
| T. Rowe Price Retirement 2020 (TRRBX) | 4.60% | Vanguard Target Retirement 2020 (VFORX) | 4.85% |
| T. Rowe Price Retirement 2025 (TRRHX) | 4.73% | Vanguard Target Retirement 2025 (VTTVX) | 5.05% |
| T. Rowe Price Retirement 2030 (TRRCX) | 4.83% | Vanguard Target Retirement 2030 (VTHRX) | 5.01% |
| T. Rowe Price Retirement 2035 (TRRJX) | 4.85% | Vanguard Target Retirement Income 2035 (VTTHX) | 4.94% |
| T. Rowe Price Equity Income (PRFDX) | (-.14%) | Vanguard Equity Income Fund Admiral Shares (VEIRX) | .3.86% |
| T. Rowe Price Growth Stock (PRGFX) | 14.80% | Vanguard Growth ETF (VUG) | 15.31% |
| T. Rowe Price Mid-Cap Growth (RPMGX) | 10.00% | Vanguard Mid-Cap Growth ETF (VOT) | 10.46% |

46.    Vail's failure to investigate lower cost alternative investments (both

actively and passively managed funds) during the Class Period cost the Plan and its

participants millions of dollars.

**47.**     By selecting and retaining the Plan's unreasonably expensive cost investments while failing to adequately investigate the use of lower cost share classes, offered by the same investment companies, or superior, lower-cost mutual funds from other fund companies that were readily available to the Plan, Vail caused Plan participants to lose millions of dollars of their retirement savings through unreasonable fees and poorly performing investments.

**48.**     Plaintiff had no knowledge of Defendant's process for selecting investments and monitoring them to ensure they remained prudent.  Plaintiff also had no knowledge of how the fees charged to and paid by Vail Plan participants compared to any other funds. Nor did Plaintiff know about the availability of lower-cost and better-performing (and other essentially identical) investment options that Vail did not offer because Vail provided no comparative information to allow Plaintiff to evaluate and compare Vail's investment options.

**THE OVERCHARGES BREACHED
DEFENDANT'S FIDUCIARY OBLIGATIONS TO THE PLAN**

**49.**      The fees of the investment offerings were paid for by the Plan participants. Vail, as fiduciary, was responsible for ensuring that these fees were reasonable.

**50.**     A plan's fiduciaries have control over defined contribution plan expenses. The fiduciaries have exclusive control over the menu of investment options to which participants may direct the assets in their accounts. Those selections each have their own fees, which are deducted from the returns that participants receive on their investments.

**51.**     At retirement, employees' benefits are limited to the value of their own

individual investment accounts, which is determined by the market performance of

employee and employer contributions, less expenses. Accordingly, unreasonable fees

can impair the value of a participant's account. Over time, even small differences in fees

and performance can result in large differences in the amount of savings available at

retirement.

**52.**     Prudent fiduciaries exercising control over administration of a plan and the

selection and monitoring of designated investment alternatives will take steps to

minimize plan expenses by hiring low-cost service providers and by curating a menu of

low-cost investment options. *See* Restatement (Third) of Trusts § 90 cmt. b ("[C]ost-

conscious management is fundamental to prudence in the investment function. . . .").

**53.**     In fact, the duty of prudence imposed under 29 U.S.C. § 1104(a)(1)(B) is a

codification of the common law prudent investor rule found in trust law.

**54.**     Given the significant variation in total plan fees attributable to plan size,

the reasonableness of expenses should be determined by comparison to other similarly-

sized plans. *See,* 29 U.S.C. § 1104(a)(1)(B) (requiring ERISA fiduciaries to discharge

their duties in the manner "that a prudent man acting in a like capacity and familiar with

such matters would use in the conduct of an enterprise of a like character").

**55.**     A fiduciary must initially determine, and continue to monitor, the prudence

of each investment option available to plan participants. A plan fiduciary cannot assume

that an investment that began as a prudent one will remain so, particularly when the

original circumstances change or the investment reveals itself to be deficient. An ERISA

fiduciary's investment decisions also must account for changed circumstances and a trustee who simply ignores changed circumstances that have increased the risk of loss to the trust's beneficiaries is imprudent.

56.     As illustrated above, the Vail Plan's fees could in many cases be significantly reduced simply by electing a different share class offered by the same issuer, or substantially identical fund from a different issuer, and are consistently well above their comparator peers, regardless of whether the comparison is based on cost per participant or percentage of assets.

57.     Prudent fiduciaries of large defined contribution plans must conduct an analysis to determine whether investments will outperform their benchmark net of fees. Prudent fiduciaries then make a reasoned decision as to whether it is in participants' best interest to offer specific funds or share classes for the particular investment style and asset class.

58.     Prudent fiduciaries of defined contribution plans continuously monitor the investment performance of plan options against applicable benchmarks and peer groups to identify underperforming investments. Based on this process, prudent fiduciaries replace those imprudent investments with better-performing and reasonably priced options.

59.     Vail is not a prudent fiduciary of the Plan because it did not make a reasoned decision to offer specific funds or share classes to the Plan participants as described herein.

60.     Vail is not a prudent fiduciary because it failed to continuously monitor the investment performance of its plan options against applicable benchmarks and peer groups, and it failed to identify and replace underperforming investments with better-performing and reasonably priced options.

61.     Investment options should not favor the fund providers over the Plan's participants. Yet here, to the detriment of the Plan and its participants and beneficiaries, Vail included and retained in the Plan, many mutual fund investments that were more expensive and otherwise not justified based on their economic value to the Plan.

## CLASS ACTION ALLEGATIONS

62.     29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to enforce a breaching fiduciary's liability to the Plan under 29 U.S.C. § 1109(a).

63.     In acting in this representative capacity, Plaintiff seeks to certify this action as a class action on behalf of all participants and beneficiaries of the Plan. Plaintiff seeks to certify, and to be appointed as representatives of, the following Class:

> *All participants and beneficiaries of the Vail Resorts 401(k) Retirement*
> *Plan beginning six years before the commencement of this action through*
> *the date of judgment, excluding the Defendant or any*
> *participant/beneficiary who is a fiduciary to the Plan.*

64.     The Class includes more than 8,276 members and is so large that joinder of all its members is impracticable, pursuant to Federal Rule of Civil Procedure 23(a)(1).

65.     There are questions of law and fact common to this Class pursuant to Federal Rule of Civil Procedure 23(a)(2), because Vail owed fiduciary duties to the Plan and took the actions and omissions alleged as the Plan and not as to any individual

participant. Common questions of law and fact include but are not limited to the following:

- Who are fiduciaries liable for the remedies provided by 29 U.S.C. § 1109(a);

- Whether the fiduciaries of the Plan breached their fiduciary duties to the Plan;

- What are the losses to the Plan resulting from each breach of fiduciary duty; and

- What Plan-wide equitable and other relief the Court should impose in light of Vail's breach of duty.

66.     Plaintiff's claims are typical of the claims of the Class pursuant to Federal Rule of Civil Procedure 23(a)(3), because Plaintiff was a participant during the time period at issue and all participants in the Plan were harmed by Vail's misconduct.

67.     Plaintiff will adequately represent the Class pursuant to Federal Rule of Civil Procedure 23(a)(4), because she was a participant in the Plan during the Class period, has no interest that conflicts with the Class, is committed to the vigorous representation of the Class, and has engaged experienced and competent lawyers to represent the Class.

68.     Certification is appropriate under Federal Rule of Civil Procedure 23(b)(1), because prosecution of separate actions for these breaches of fiduciary duties by individual participants and beneficiaries would create the risk of (1) inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendant concerning its discharge of fiduciary duties to the Plan and personal liability to the Plan under 29 U.S.C. § 1109(a), and (2) adjudications by individual participants

and beneficiaries regarding these breaches of fiduciary duties and remedies for the Plan would, as a practical matter, be dispositive of the interests of the participants and beneficiaries who are not parties to the adjudication, or would substantially impair those participants' and beneficiaries' ability to protect their interests.

69.     Certification is also appropriate under Federal Rule of Civil Procedure 23(b)(2) because Vail has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

70.     Plaintiff's attorneys are experienced in complex commercial and class litigation and will adequately represent the Class.

71.     The claims brought by the Plaintiff arise from fiduciary breaches as to the Plans in its entirety and do not involve mismanagement of individual accounts. The claims asserted on behalf of the Plan, in this case, fall outside the scope of any exhaustion language in individual participants' plans.  Exhaustion is intended to serve as an administrative procedure for participants and beneficiaries whose claims have been denied and not where a participant or beneficiary brings suit on behalf of a plan for breaches of fiduciary duty.

72.     Under ERISA, an individual "participant" or "beneficiary" are distinct from an ERISA plan. A participant's obligation – such as a requirement to exhaust administrative remedies – does not, by itself, bind the plan.

73.     Moreover, any administrative appeal would be futile because the entity hearing the appeal (the Plan Administrator) is the same Plan Administrator that made

the decisions that are at issue in this lawsuit. So too, policy supporting exhaustion of administrative remedies in certain circumstances – that the Court should review and where appropriate defer to a plan administrator's decision – doesn't exist here because courts will not defer to plan administrator's legal analysis and interpretation.

## LEGAL CLAIMS
### Count 1 – Breach of Duties of Loyalty and Prudence
### 29 U.S.C. § 1104(a)(1)(A)–(B), (D)

**74.** Plaintiff restates the above allegations as if fully set forth herein.

**75.** Vail is a fiduciary of the Plan under 29 U.S.C. §§ 1002(21) and/or 1102(a)(1). It is responsible for selecting prudent investment options, ensuring that those options charge only reasonable fees, and taking any other necessary steps to ensure that the Plan's assets are invested prudently. Vail had a continuing duty to evaluate and monitor the Plan's investments on an ongoing basis and to "remove imprudent ones" regardless of how long a fund has been in the plan. *Tibble,* 135 S. Ct. at 1829.

**76.** 29 U.S.C. § 1104 imposes fiduciary duties of prudence and loyalty upon defendants in their administration of the Plan. The scope of the fiduciary duties and responsibilities of defendants include managing the assets of the Plan for the sole and exclusive benefit of Plan participants and beneficiaries, defraying reasonable expenses of administering the Plan, and acting with the care, skill, diligence, and prudence required by ERISA. These duties further required Defendant to independently assess whether each option was a prudent choice for the Plan.  *DiFelice,* 497 F.3d at 423; *see Braden,* 588 F.3d at 590, 595–96.

**77.** Vail was directly responsible for ensuring that the Plan's fees were reasonable, selecting investment options in a prudent fashion in the best interest of Plan participants, prudently evaluating and monitoring the Plan's investments on an ongoing basis and eliminating funds or share classes that did not serve the best interest of Plan participants, and taking all necessary steps to ensure that the Plan's assets were invested prudently and appropriately.

**78.** Vail failed to employ a prudent and loyal process by failing to critically or objectively evaluate the cost and performance of the Plan's investments and fees in comparison to other investment options. Vail selected and retained for years as Plan investment options' mutual funds with high expenses relative to other investment options that were readily available to the Plan at all relevant times.

**79.** Vail failed to engage in a prudent process for monitoring the Plan's investments and removing imprudent ones within a reasonable period. This resulted in the Plan continuing to offer unreasonably expensive funds and share classes compared to equivalent and/or comparable low-cost alternatives that were available to the Plan. Through these actions and omissions, Vail failed to discharge its duties with respect to the Plan in violation of its fiduciary duty of loyalty under 29 U.S.C. § 1104(a)(1)(A).

**80.** Vail failed to discharge its duties with respect to the Plan with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would have used in the conduct of an enterprise of like character and with like aims, breaching its duties under 29 U.S.C. § 1104(a)(1)(B).

**81.**     Vail is liable under 29 U.S.C. §§ 1109(a) and 1132(a)(2) to make good to the Plan the losses resulting from the breaches, to restore to the Plan any profits defendants made through the use of Plan assets, and to restore to the Plan any profits resulting from the breaches of fiduciary duties alleged in this Count. In addition, Defendant is subject to other equitable relief pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(3).

**RELIEF REQUESTED**

**WHEREFORE**, Plaintiff, on behalf of the Plan, requests the following:

- A declaration that Vail breached its fiduciary duties as described above;

- An order that requires Vail make good to the Plan all losses resulting from each breach of fiduciary duty, and to otherwise restore the Plan to the position it would have occupied but for the breaches of fiduciary duty;

- An order for an accounting to determine the amounts that Vail must make good to the Plan;

- An order removing the fiduciaries who have breached their fiduciary duties;

- An order certifying the Class and appointing the named Plaintiff as a class representative and undersigned counsel as Class Counsel;

- A declaration awarding to Plaintiff and the Class their attorneys' fees and costs under 29 U.S.C. § 1132(g)(1);

- A declaration awarding interest to the extent it is allowed by law; and

- A declaration awarding any other equitable and/or remedial relief the Court deems appropriate.

DATED this 29th day of May, 2020

Respectfully Submitted,

**BAIRD QUINN LLC**

_/s/ J. Mark Baird_

J. Mark Baird, #22276
Beth Doherty Quinn, #26016
2036 East 17th Avenue
Denver, CO  80206
Tel:  (303) 813-4500
Fax: (303) 813-4501
jmb@bairdquinn.com
bdq@bairdquinn.com

**GREG COLEMAN LAW**
Greg F. Coleman
Arthur Stock
Ryan P. McMillan
greg@gregcolemanlaw.com
arthur@gregcolemanlaw.com
ryan@gregcolemanlaw.com
800 South Gay Street
Suite 1100
Knoxville, TN 37929
Tel: (865) 247-0080
Fax: (865) 522-0049

**CRUEGER DICKINSON LLC**
Charles Crueger
Benjamin Kaplan
cjc@cruegerdickinson.com
bak@cruegerdickinson.com
4532 North Oakland Avenue
Whitefish Bay, WI 53211
Tel: (414) 210-3868

**JORDAN LEWIS, P.A.**
Jordan Lewis
jordan@jml-lawfirm.com
4473 N.E. 11th Avenue
Fort Lauderdale, FL 33334
Tel: (954) 616-8995
Fax: (954) 206-0374

30

**WEXLER WALLACE LLP**
Edward A. Wallace
eaw@wexlerwallace.com
55 West Monroe, Suite 3300
 Chicago, IL 60603
Tel.  312.346.2222
Fax.  312.346.0022

***Attorneys for Plaintiff***


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing, **AMENDED CLASS ACTION COMPLAINT FOR CLAIMS UNDER 29 U.S.S. § 1132(a)(2)** was filed with the Court and served electronically via the CM/ECF system on this 29th day of May, 2020, addressed to the following:

Michael J. Hofmann, Esq.
Michael.hofmann@bcplaw.com

Mark B. Blocker, Esq.
mblocker@sidley.com

Benjamin I. Friedman
Benjamin.friedman@sidley.com

E. Tim Walker, Esq.
etwalker@vailresorts.com

Alexander D. White, Esq.
Alexander.white@vailresorts.com

*/s/ Diane Burns*
OF Baird Quinn LLC