

SIDLEY AUSTIN LLP
ONE SOUTH DEARBORN STREET
CHICAGO, IL 60603
+1 312 853 7000
+1 312 853 7036 FAX

+1 312 853 6097
MBLOCKER@SIDLEY.COM

AMERICA • ASIA PACIFIC • EUROPE

June 19, 2020

*Via CM/ECF*
Hon. R. Brooke Jackson
Alfred A. Arraj United States Courthouse
901 19th Street
Denver CO 80294-3589

Re:   Kurtz v. The Vail Corporation, No. 1:20-cc-00500-RBJ

Dear Judge Jackson:

Pursuant to Your Honor's Practice Standards, I write on behalf of Defendant The Vail Corporation ("Vail") to request permission to file a motion to dismiss under Rules 12(b)(1) and 12(b)(6). The parties had several productive meet-and-confer sessions relating to the original complaint, and that resulted in an amended complaint that dropped some claims but added a new one. Plaintiff also dropped her demand for a jury trial, so the parties now agree that this will be a bench trial. The parties again conferred by phone after the filing of the Amended Complaint (Dkt. 30), but could not agree to narrow the case further. The bases for Vail's anticipated motion to dismiss are set forth below.

Vail sponsors the Vail Resorts 401(k) Retirement Plan (the "Plan"), which is a defined-contribution plan governed by ERISA. Plaintiff Debra Kurtz is a former Vail employee who participates in the Plan. During the relevant period, Plan participants could choose from among 27 different investment options offering a wide range of investment strategies and differing costs. Am. Compl. ¶¶ 11, 16, 26. The Amended Complaint alleges that 15 mutual fund options were imprudent. Eleven of them are part of a suite of target date funds, and the other four are funds geared to specific asset classes. All 15 are offered by T. Rowe Price, whose mutual funds are commonly offered in 401(k) plans. *Id*. ¶ 38. The single-count Amended Complaint alleges that Vail breached its fiduciary duties of prudence and loyalty under ERISA. *Id*. ¶¶ 4–5.

The Amended Complaint should be dismissed for two reasons: (1) the complaint does not state a claim, and (2) Plaintiff lacks standing to assert claims as to 10 of the 15 challenged options.

***Prudence Claim***. To allege an imprudence claim, Plaintiff must allege that Vail's process for monitoring investment options was deficient. *See, e.g., In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 434 (3d Cir. 1996). There are no allegations about Vail's process, so Plaintiff is asking the Court to infer a deficient process from two facts about the challenged options: (1) there were

Sidley Austin LLP is a limited liability partnership practicing in affiliation with other Sidley Austin partnerships.

# SIDLEY

cheaper share classes of the mutual funds available; and (2) the funds were actively managed rather than passively managed.[1] Neither fact suggests imprudence.

Share class claim: This theory fails because, in motion-to-dismiss parlance, there is an "obvious alternative explanation" for choosing higher-cost share classes—the funds at issue paid revenue sharing. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567 (2007). Revenue sharing is explained in detail in *Leimkuehler v. American United Life Ins. Co.*, 713 F.3d 905 (7th Cir. 2013), but simply explained, it works like this. Every 401(k) plan hires an entity to provide administrative services (like recordkeeping). The service provider can be compensated in two ways: direct payments from participants (i.e., a per-participant fee) or revenue sharing. There is no "right" way to compensate service providers, but the only way to do it through revenue sharing is to include share classes of mutual funds that include a revenue sharing component (and thus cost more than share classes without it). Here, the Plan used revenue sharing. So the incremental cost of the higher cost share classes benefitted the Plan by paying for recordkeeping. Any revenue sharing not needed to pay the service provider was rebated to participants; this is disclosed in the Plan's public filings.

Defendant pointed this out in the original meet-and-confer, and Plaintiff responded by adding paragraph 37, which now admits that the Plan used revenue sharing, but alleges that the "savings represented by these rebates did not fully compensate the Plan for the higher costs of the share classes." The Amended Complaint does not explain what this means, and Plaintiff could not do so at the recent meet-and-confer either. There is no explanation because all of the revenue sharing payments benefited participants. For example, if the revenue sharing associated with using higher share classes equaled $100 and the recordkeeper charged $75 for administrative services, Vail used $75 to pay the recordkeeper and rebated $25 to participants. All of the revenue sharing was used to benefit participants and therefore the Plan and participants were fully compensated for the use of higher cost share classes. The Court does not need discovery or a trial to confirm this simple point. *White v. Chevron Corp.*, 2016 WL 4502808, at *6 (N.D. Cal. Aug. 29, 2016) (holding that revenue sharing allegations did not state a claim for breach of fiduciary duty under ERISA).

Actively Managed funds: There are two general types of mutual funds: ones that try to match an index (passive) and ones that try to beat an index (active); the latter require more effort and therefore have higher fees. Plaintiff is asking this Court to hold that a 401(k) plan can *never* offer actively-managed funds because they cost more. This claim was not in the original complaint.

There are three problems with this claim. First, it violates the settled principle that fiduciaries are not required to choose the cheapest funds. *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009). Second, it violates an equally settled principle that fiduciaries are not required to choose any particular type of investment option. *White*, 2016 WL 4502808, at *6. Third,

---

[1] The Amended Complaint also contains comparisons of total plan costs, but the only sub-component of those costs that Plaintiff challenges is investment expenses. Am. Compl. ¶ 32. This is not a separate claim; it is duplicative of Plaintiff's other claims and fails for the reasons explained in this letter.

**SIDLEY**

Page 3

applying these principles, courts have held that choosing actively managed funds does not violate ERISA. *See, e.g.*, *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 823 (8th Cir. 2018) (rejecting nearly identical claim based on comparison between Wells Fargo Target Date Funds and Vanguard funds); *Rosen v. Prudential Ret. Ins. & Annuity Co.*, 2016 WL 7494320, at *15 (D. Conn. Dec. 30, 2016) (rejecting claim that inclusion of "actively-managed mutual funds . . . is imprudent and imposes unwanted expenses on Plan participants"); *Bekker v. Neuberger Berman Grp. LLC*, 2018 WL 4636841, at *7 (S.D.N.Y. Sept. 27, 2018) (rejecting claim based on comparison between actively managed mutual funds and passively managed mutual funds); *Taylor v. United Techs. Corp.*, 2009 WL 535779, at *10 (D. Conn. Mar. 3, 2009) (rejecting claim notwithstanding "the near certainty that an actively-managed mutual fund will not outperform lower-fee index funds").

*Duty of Loyalty*. A fiduciary breaches the duty of loyalty when it acts "*for the purpose of* providing benefits to itself or some third party." *Cassell v. Vanderbilt Univ.*, 285 F. Supp. 3d 1056, 1061–62 (M.D. Tenn. 2018). We pointed out in the original meet-and-confer that the complaint made no such allegations, so Plaintiff responded by adding paragraph 61, which alleges that Vail's decision to offer the challenged funds ended-up "favor[ing] the fund providers over the Plan's participants." But that does not state a loyalty claim, because the fact that a fiduciary's decision had the *result* of benefitting the mutual fund provider is insufficient to show that was the purpose of the decision. *See, e.g., id.*; *White*, 2016 WL 4502808, at *5. If pointing to the result were enough, every fiduciary breach claim involving investments would automatically establish a breach of the duty of loyalty, which makes no sense. In addition, and regardless, the investments here did not favor the fund provider because it rebated revenue sharing to the Plan.

*Standing*. Finally, while not dispositive of the entire case, Plaintiff lacks Article III standing to challenge investment options in which she did not personally invest. Plaintiff only invested in 5 of the 15 challenged options, so she could not have been injured by actions relating to the other 10. *See*, *e.g.*, *Brown-Davis v. Walgreen Co.*, No. 19-cv-5392, Dkt. 46, slip op. at 3–4 (N.D. Ill. Mar. 16, 2020); *Patterson v. Morgan Stanley*, 2019 WL 4934834, at *5 (S.D.N.Y. Oct. 7, 2019); *Wilcox v. Georgetown Univ.*, 2019 WL 132281, at *9 (D.D.C. Jan. 8, 2019); *Dezelan v. Voya Ret. Ins. & Annuity Co.*, 2017 WL 2909714, at *6-7 (D. Conn. July 6, 2017).

For these reasons, Vail respectfully requests that the Court allow Vail to file a motion to dismiss the Amended Complaint under Rules 12(b)(1) and 12(b)(6).

Sincerely,

*/s/ Mark B. Blocker*
Mark B. Blocker

cc:   Counsel of Record

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 19, 2020, I caused to be electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification to all counsel of record.

Gregory F. Coleman
Arthur Michael Stock
Ryan Patrick McMillan
Greg Coleman Law PC
First Tennessee Plaza
800 South Gay Street, Suite 1100
Knoxville, TN 37929
arthur@gregcolemanlaw.com
greg@gregcolemanlaw.com
ryan@gregcolemanlaw.com

John Mark Baird
Beth Doherty Quinn (via email)
Baird Quinn, LLC
2036 East 17th Avenue
Denver, CO 80206
jmb@bairdquinn.com
bdq@bairdquinn.com

Charles Crueger
Benjanim Kaplan
Crueger Dickinson LLC
4532 North Oakland Avenue
Whitefish Bay, WI 53211
cjc@cruegerdickinson.com
bak@cruegerdickinson.com

Jordan Lewis
Jordan Lewis, P.A.
4473 N.E. 11thAvenue
Fort Lauderdale, FL 33334
jordan@jml-lawfirm.com

*s/ Mark B. Blocker*
Mark B. Blocker