**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:20-cv-00500-RBJ

DEBRA KURTZ, individually, and as representative
of a Class of Participants and Beneficiaries, on Behalf
of the Vail Resorts 401(k) Retirement Plan,

        Plaintiff,

v.

 THE VAIL CORPORATION,

        Defendant.

---

### DEFENDANT'S MOTION TO DISMISS UNDER RULES 12(b)(1) AND 12(b)(6)

---

Defendant The Vail Corporation ("Vail") hereby moves, pursuant to Federal Rules 12(b)(1) and 12(b)(6), to dismiss the Amended Complaint (the "AC") (Dkt. 30). In support of this motion, Vail submits the following points and authorities and respectfully requests the opportunity to discuss these points and authorities at oral argument.

### INTRODUCTION

This action arises from the 401(k) plan that Vail offers to its employees, known as the Vail Resorts 401(k) Retirement Plan (the "Plan"). One of Vail's responsibilities under ERISA is to select and monitor the Plan's menu of investment options to enable participants to choose the ones that suit their retirement needs and objectives. The menu offered 27 mutual funds with different strategies. Some of the funds tried to match the return of a specific index (a passively managed fund) and others tried to outperform an index (an actively managed fund). Vail let all participants choose the options that best suited their investment style and objectives. This lawsuit seeks to deprive participants of choice by having the Court require that the Plan offer *only* passively managed funds with the lowest possible cost.

The Amended Complaint alleges that Vail breached its fiduciary duties in three ways. First, Plaintiff contends that actively managed funds are *per se* imprudent because they cost more than passively managed funds and (sometimes) do not beat a market index. Second, Plaintiff alleges that the Plan could have chosen different share classes of the same investment options for 15 of the 27 funds on the Plan's menu. Mutual funds generally offer several classes of shares with varying costs. Plaintiff seeks to impose her preferred investing style by asking the Court to hold that a Plan must *always* be in the lowest-cost share class even if the higher-cost share classes provide benefits to the Plan and its participants. Third, Plaintiff asserts that the Plan's overall fees were too high. All of these theories are contained in a single count for breach of the fiduciary duties of prudence and loyalty.

The Amended Complaint should be dismissed for three reasons. First, Plaintiff only invested in 5 of the 15 challenged options, so she does not have standing to assert claims relating to the other 10—none of those options could have affected the value of her account. Second, the Amended Complaint fails to plausibly allege any breach of fiduciary duty. Offering higher cost share classes of a mutual fund does not plausibly suggest a breach—as courts around the country have held—because such conduct is equally consistent with the entirely permissible use of revenue sharing to pay plan expenses. The Plan's public filings confirm that is what happened here: the Plan used revenue sharing to pay plan expenses. Offering actively managed funds does not allege a breach either, and numerous courts have rejected this exact same theory. Third, Plaintiff has not alleged a breach of the duty of loyalty because she does not allege that the funds at issue were chosen to benefit someone else. For these reasons, the Amended Complaint should be dismissed with prejudice.

### BACKGROUND

*The Parties.* Defendant The Vail Corporation is a Colorado corporation that operates ski resorts throughout the country. AC ¶ 14. Plaintiff Debra Kurtz ("Plaintiff") is a former Vail employee. *See id.* ¶ 11.

*The Plan.* Vail offers full-time employees the opportunity to participate in a 401(k) plan. AC ¶ 16. The Plan is a defined-contribution pension plan under ERISA, which means that "employees' benefits are limited to the value of their own individual investment accounts." *Id.* at ¶ 51. Vail is the Plan's sponsor and named fiduciary. *Id.* ¶¶ 14-15. At the end of 2018, the Plan had over 8,000 participants and over $300 million in assets. *Id.* ¶ 26.

*The Plan's Investment Options.* The Plan offered participants 27 different investment options (mostly mutual funds) from which they could choose. *Id.* ¶ 26. Vail is responsible for monitoring the fees and performance of the investment options (*id.* ¶ 75), and carries out its responsibilities through two internal committees: an Administrative Committee and a Fiduciary Committee. Declaration of Benjamin I. Friedman ("Friedman Decl."), Ex. 1 at 5 (2014 Form 5500).[1] To help these committees fulfill their fiduciary duties, Vail retained Aon Hewitt, a nationally respected retirement plan consultant, which regularly evaluated the Plan's investment options and administrative expenses. *Id.* at 29.

*The TRP Options.* The Amended Complaint challenges the inclusion of 15 of the 27 options—no issue is raised about the other 12. *See* AC ¶ 36. The challenged options are all offered by T. Rowe Price ("TRP"), a highly regarded company whose mutual funds are offered in a vast number of 401(k) plans. The Amended Complaint is focused on the fact that each of

---

[1] The Court can consider the Plan's publicly-filed Form 5500s because they are government-mandated and publicly available. *Estate of Balli v. Plumbers, Pipe Fitters & MES Local Union No. 392 Pension Fund*, No. 18-cv-816, 2019 WL 2233347, at *3 n.5 (S.D. Ohio May 23, 2019).

those options was "actively managed" and each offered a different "share class" at lower cost. Each of these concepts is explained below.

Active v. Passive Funds. There are two general types of mutual funds: ones that try to match an index (passive) and ones that try to beat an index (active). The manager of a passively managed fund purchases the exact mix of securities reflected in a market index; the manager of an actively-managed fund purchases securities that it believes will outperform a market index. Actively managed funds therefore require more effort and have higher fees (referred to as an "expense ratio"). ERISA does not require or prohibit the use of either type of option, but instead allows Plan fiduciaries to give participants a choice between the two types. *Divane v. Nw. Univ.*, 953 F.3d 980, 989 (7th Cir. 2020) (noting the primacy of participant choice in ERISA) (quoting *Loomis v. Exelon Corp.*, 658 F.3d 667, 673-74 (7th Cir. 2011)).

Share Classes and Revenue Sharing. Many mutual funds, including the TRP funds, have different share classes. Each share class of a particular mutual fund invests in the same underlying assets, but have different expense ratios that represent the cost of the fund. The differences between the expense ratios of different share classes are attributable to the amount of "revenue sharing" returned to the Plan to offset expenses. Many "retail" share classes, similar to those offered in the Plan, paid revenue sharing and, as a result, cost more than "institutional" share classes of the same funds.

Revenue sharing is explained in detail in *Leimkuehler v. American United Life Insurance. Co.*, 713 F.3d 905 (7th Cir. 2013), but simply explained, it works like this: every 401(k) plan hires an entity to provide administrative services (like recordkeeping) to the plan. A service provider can be compensated in two ways: direct payments from participants (i.e., a per-participant fee) or revenue sharing. *Id.* at 909. There is no "right" way to compensate service

4

providers, but the only way to do it through revenue sharing is to include share classes of mutual funds that include a revenue sharing amount (and thus cost more than share classes without it). Expense ratios and revenue sharing generally move in tandem; higher expense ratios include more revenue sharing and lower expense ratios include less. *Id*. Each of the TRP funds offers at least two share classes: one share class that pays revenue sharing and another that does not. Freidman Decl., Ex. 2 at 3-7 (2020 T. Rowe Price Growth Stock Fund Prospectus).[2]

<u>The Plan Used Revenue Sharing.</u> The Plan's public filings explain that the Plan used revenue sharing to pay its administrative expenses. These revenue sharing payments were deposited into the Plan's expense account. The Plan then used the revenue sharing "to pay administrative expenses of the Plan" or allocated the money "directly back to participants' accounts," i.e., credited it to participants. Friedman Decl., Ex. 3 at 5 (2018 Form 5500); *see also* Friedman Decl. Ex. 1 at 6 (2014 Form 5500).

## ARGUMENT

### I. The Court Should Dismiss for Lack of Standing the Claims Based on the Ten Challenged Funds In Which Plaintiff Never Invested.

Plaintiff only invested in 5 of the 15 challenged options; she never invested a cent in the other 10. *See* Friedman Decl., Ex. 4 (Kurtz Statement).[3] As a result, Plaintiff has no standing to challenge any of the 10 other options at issue because she has not alleged the first and foremost

---

[2] The Court may take judicial notice of public records, including mutual fund prospectuses filed with the SEC. *See Wasatch Equal. v. Alta Ski Lifts Co.*, 820 F.3d 381, 386 (10th Cir. 2016); *Schuh v. HCA Holdings, Inc.*, 947 F. Supp. 2d 882, 885 n.2 (M.D. Tenn. 2013). The T. Rowe Price Growth fund was an option in the Plan throughout the purported class period and all of the other TRP funds have a similar structure.

[3] Federal Rule of Civil Procedure 12(b)(1) allows the Court to dismiss a complaint for lack of Article III standing. *Baca v. Colorado Dep't of State*, 935 F.3d 887, 905 (10th Cir. 2019), *rev'd on other grounds by* No. 19-518, 2020 WL 3633778 (U.S. July 6, 2020). This Rule 12(b)(1) motion challenges the factual basis for standing, so plaintiff "has the burden to establish that it is proper, and there is a presumption against its existence." *Salzer v. SSM Health Care of Okla. Inc.*, 762 F.3d 1130, 1134 (10th Cir. 2014). If relevant facts are in dispute, the Court has "wide discretion" to consider evidence outside the complaint and without converting the motion into one for summary judgment. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).

element of Article III standing: an "injury in fact" that is "concrete and particularized." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Because Plaintiff must establish standing for *each* claim, *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006), she lacks standing to pursue claims for any option in which she did not invest.

The "irreducible constitutional minimum" of standing requires a plaintiff to allege that she suffered an injury-in-fact that is "concrete and particularized," that the injury is fairly traceable to the defendant's conduct, and that the injury will be redressed by a favorable decision. *Lujan*, 504 U.S. at 560–61. For ERISA breach-of-fiduciary duty claims, a plaintiff "cannot claim that either an alleged breach of fiduciary duty . . . or a deprivation of [an] entitlement to that fiduciary duty, in and of themselves constitutes an injury-in-fact sufficient for constitutional standing." *Kendall v. Emps. Ret. Plan of Avon Prods.*, 561 F.3d 112, 121 (2d Cir. 2009). Nor does a plaintiff have standing by virtue of the fact that ERISA allows participants to bring claims as a representative of the plan itself. *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1620 (2020); *In re UBS ERISA Litig.*, No. 08-cv-6696, 2014 WL 4812387, at *6 (S.D.N.Y. Sept. 29, 2014) (holding that a plaintiff cannot show an injury "simply by claiming that the [Plan] itself suffered losses"), *aff'd sub nom. Taveras v. UBS AG*, 612 F. App'x 27 (2d Cir. 2015). Instead, a plaintiff "can only demonstrate a constitutionally sufficient injury by pointing to [her] individual account's specific losses during the class period." *UBS*, 2014 WL 4812387, at *6 (emphasis omitted).

Under these principles, Plaintiff only has standing to bring claims involving options in which she actually invested. Because Plaintiff never invested in 10 of the challenged options, a judgment in her favor with respect to those options would not change the value of her individual account. Proving that a fund in which she never invested was imprudent, and awarding damages

for that misconduct, would not increase the amount in her individual account because she would not receive any of the damages attributable to the inclusion of those funds. As a result, she simply does not have standing to challenge the 10 funds in which she never invested.

The Supreme Court drove this point home recently in *Thole v. U.S. Bank*. In *Thole*, plaintiff alleged that the plan fiduciaries had breached their ERISA fiduciary duties by choosing imprudent investment options that resulted in hundreds of millions of dollars in losses to the plan. 140 S. Ct. at 1618. The Court, however, held that plaintiff lacked standing to assert any claims because her benefits would not be changed by the outcome of the lawsuit. *Id*. at 1618-19. As the Court pointed out, plaintiff would be entitled to the same amount of monthly benefits regardless of whether she won or lost the case. *Id*. The same is true here as to the 10 challenged options; no judgment in Plaintiff's favor would change the amount in her personal account.

Although *Thole* involved a defined-benefit plan, rather than a 401(k) plan, the Court's reasoning applies equally to both types of plans. In fact, even before *Thole*, numerous courts had applied the reasoning adopted in *Thole* to conclude that 401(k) plan participants lacked standing to pursue claims involving investment options in which they never invested. *See, e.g., Barrett v. Pioneer Nat. Res. USA, Inc.*, No. 17-cv-1579, 2018 WL 3209108, at *3-4 (D. Colo. June 29, 2018); *Patterson v. Stanley*, No. 16-cv-6568, 2019 WL 4934834, at *5 (S.D.N.Y. Oct. 7, 2019); *Caltagirone v. N.Y. Cmty. Bancorp, Inc.*, 257 F. App'x 470, 473 (2d Cir. 2007); *Brown-Davis v. Walgreen Co.*, No. 19-cv-5392, slip op. at 3–4 (N.D. Ill. Mar. 16, 2020); *Wilcox v. Georgetown Univ.*, No. 18-422, 2019 WL 132281, at *9 (D.D.C. Jan. 8, 2019), *appeal docketed*, No. 19-7065 (D.C. Cir. June 28, 2019); *Dezelan v. Voya Ret. Ins. & Annuity Co.*, No. 16-cv-1251, 2017 WL 2909714, at *6 (D. Conn. July 6, 2017); *Marshall v. Northrop Grumman Corp.*, No. 16-cv-6794,

2017 WL 2930839, at *8 (C.D. Cal. Jan. 30, 2017); *In re Meridian Funds Grp. Sec. & ERISA Litig.*, 917 F. Supp. 2d 231, 235 (S.D.N.Y. 2013).

The Court therefore should dismiss the Amended Complaint as to the 10 challenged options Plaintiff never invested in.[4]

## II.    The Complaint Fails to State a Claim for Breach of Fiduciary Duty.

All of Plaintiff's claims should also be dismissed for failure to state a plausible claim. As the Supreme Court has noted, a motion to dismiss in an ERISA case is an "important mechanism for weeding out meritless claims," *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014), because "the prospect of discovery in a suit claiming breach of fiduciary duty is ominous, potentially exposing the ERISA fiduciary to probing and costly inquiries and document requests about its methods and knowledge at the relevant times," *Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 719 (2d Cir. 2013). The claims asserted here are exactly the type of claims the Court should weed out at the pleading stage.

ERISA requires plan fiduciaries to act "with the care, skill, prudence, and diligence under the circumstances then prevailing." 29 U.S.C. § 1104(a)(1)(B). To state a claim for a breach of the duty of prudence, a complaint must include well-pleaded allegations suggesting that a fiduciary did not "employ[] the appropriate methods to investigate the merits" of a decision. *Birse v. CenturyLink, Inc.*, No. 17-cv-02872-CMA-NYW, 2018 WL 6603961, at *5 (D. Colo. Nov. 19, 2018). Unadorned allegations about the cost or ultimate outcome of an investment, as opposed to the process for selecting it, are insufficient. *Bunch v. W.R. Grace & Co.*, 555 F.3d 1, 7 (1st Cir. 2009). To survive dismissal, the Amended Complaint must therefore allege facts

---

[4] Specifically, Plaintiff did not invest in the following funds: T. Rowe Price Retirement 2005; T. Rowe Price Retirement 2010; T. Rowe Price Retirement 2020; T. Rowe Price Retirement 2025; T. Rowe Price Retirement 2030; T. Rowe Price Retirement 2035; T. Rowe Price Retirement 2040; T. Rowe Price Retirement 2045; T. Rowe Price Retirement 2050; and T. Rowe Price Retirement 2055. Any claims related to these funds therefore should be dismissed.

showing that Vail failed to undertake a "reasoned decision-making process, consistent with that of a prudent [person] acting in a like capacity." *Pfeil v. State St. Bank & Tr. Co.*, 806 F.3d 377, 384 (6th Cir. 2015) (emphasis omitted).

The Amended Complaint does not address Vail's process for monitoring the Plan's investment options and expenses. Instead, it asks the Court to infer imprudence solely from the fact that the challenged funds were actively managed rather than passively managed and that the Plan did not offer the lowest-cost share class of the 15 challenged options. Neither of these theories states a viable prudence claim.

### A. Plaintiff's Actively-Managed Funds Claim is Implausible.

Plaintiff's first theory of imprudence is that Vail breached its fiduciary duties under ERISA by offering the actively managed TRP mutual funds, instead of lower-cost, passively managed index funds from a different company. AC ¶ 43. Courts have routinely rejected similar claims; indeed, during the meet-and-confer process, Plaintiff could not identify a single court that held that ERISA prohibits fiduciaries from offering actively managed mutual funds.

There are four problems with this claim. First, it violates the settled principle that fiduciaries are not required to choose the cheapest funds. *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009). And that is exactly what Plaintiff is alleging—passively managed funds are less expensive so Vail should have offered those instead.

Second, Plaintiff's theory violates an equally settled principle that fiduciaries are not required to choose any particular type of investment option. *See White v. Chevron Corp.*, No. 16-cv-793, 2016 WL 4502808, at *6 (N.D. Cal. Aug. 29, 2016). Again, that is exactly what Plaintiff is alleging. She is claiming that a fiduciary can *never* offer actively managed mutual funds because passively managed funds always will be cheaper. A holding that a fiduciary can never offer actively managed funds would be an extraordinary result—it would mean that the

9

thousands of 401(k) plans that use actively managed funds would immediately have to replace those funds. And it means that participants would never have the opportunity to pursue market-beating returns. ERISA does not compel these results because it simply does not prohibit the use of actively managed funds.

Third, applying these principles, courts have held that offering actively managed funds does not violate ERISA. *See, e.g.*, *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 823 (8th Cir. 2018) (rejecting nearly identical claim based on comparison between Wells Fargo Target Date Funds and Vanguard funds); *Rosen v. Prudential Ret. Ins. & Annuity Co.*, No. 15-cv-1839, 2016 WL 7494320, at *15 (D. Conn. Dec. 30, 2016) (rejecting claim that inclusion of "actively-managed mutual funds . . . is imprudent and imposes unwanted expenses on Plan participants"), *aff'd*, 718 F. App'x 3 (2d Cir. 2017); *Bekker v. Neuberger Berman Grp. LLC*, No. 16 CV 6123, 2018 WL 4636841, at *7 (S.D.N.Y. Sept. 27, 2018) (rejecting claim based on comparison between actively managed mutual funds and passively managed mutual funds); *Taylor v. United Techs. Corp.*, No. 06 CV 1494, 2009 WL 535779, at *10 (D. Conn. Mar. 3, 2009) (rejecting claim notwithstanding "the 'near certainty' that an actively-managed mutual fund will not outperform lower-fee index funds"), *aff'd*, 354 F. App'x 525 (2d Cir. 2009).

Fourth, Plaintiff's theory overlooks the fact that the Plan *offered* passively-managed mutual funds throughout the class period, which means that Vail's fiduciary process included consideration of passively managed index funds. *See Rosen*, 2016 WL 7494320, at *15 ("The inclusion of . . . lower-cost alternatives undermines" plaintiffs' claim that defendants breached their fiduciary duties by charging excessive fees"). The Plan offered three passively managed mutual funds: Vanguard 500 Index-Admiral, Vanguard Extended Market Index-Admiral, and Vanguard Total Bond Market Index-Admiral. Friedman Decl., Ex. 1 at 8 (2014 Form 5500) and

10

Ex. 3 at 6 (2018 Form 5500). Thus, for participants who wanted to invest in lower cost, passively managed funds, rather than actively managed funds, the Plan made those options available, and thus "plan participants were [not] forced to stomach an unappetizing menu." *Divane*, 953 F.3d at 991. And as one court recently pointed out in dismissing similar claims, "a plan is not required to offer *only* index funds—it's not a breach of fiduciary duty to include high-fee funds along with cheaper funds so long as the 'fiduciary's overall performance' is not deficient." *Martin v. CareerBuilder, LLC*, No. 19-CV-6463, 2020 WL 3578022, at *4 (N.D. Ill. July 1, 2020). Plaintiff's actively-managed funds theory is implausible.

### B.     Plaintiff's Lowest-Share-Class Claim Is Implausible.

Plaintiff's second theory is that Vail breached its fiduciary duty of prudence by failing to offer the lowest-cost share class for each of the 15 challenged options. AC ¶¶ 29-30. The table in Paragraph 38 of the Amended Complaint shows that the difference between the Plan's share class and the lowest share class was slight—between 0.12% - 0.14%. According to the Amended Complaint, it is *per se* imprudent to offer anything other than lowest-cost share class.

But courts across the country have considered—and rejected—the theory that a fiduciary violates ERISA by offering higher cost "retail" share classes rather than less expensive "institutional" share classes. *See, e.g.*, *Hecker*, 556 F.3d at 586; *Loomis*, 658 F.3d at 671; *In re Honda of Am. Mfg., Inc. ERISA Fees Litig.*, 661 F. Supp. 2d 861, 867 (S.D. Ohio 2009); *White*, 2016 WL 4502808, at *11. Plaintiff's theory wrongly assumes "that the mere inclusion of a fund with an expense ratio that is higher than that of the lowest share class violates the duty of prudence." *White*, 2016 WL 4502808, at *11. But courts have held that "merely alleging that a Plan offers retail-class rather than institutional-class funds is insufficient to state a claim for the breach of duty of prudence." *White v. Chevron Corp.*, No. 16-cv-793, 2017 WL 2352137, at *14 (N.D. Cal. May 31, 2017), *aff'd*, 752 F. App'x 453 (9th Cir. 2018).

That is especially true in this case, where there is an "obvious alternative explanation" for the Plan's inclusion of higher-cost mutual fund share classes: use of revenue sharing to pay plan expenses. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567 (2007). The TRP funds' prospectus explains that the share classes used in the Plan "make administrative fee payments"—commonly referred to as revenue sharing payments—"at an annual rate of up to 0.15% of the class' [sic] average daily net assets" to retirement plan recordkeepers for administrative services, but the Class I shares do not. *See, e.g.*, Friedman Decl., Ex. 2 at 4-5 (2020 T. Rowe Price Growth Stock Fund Prospectus). The 0.12% - 0.14% difference in fees between (a) the share class used in the Plan and (b) the lower-cost share class Plaintiff contends should have been used is the revenue sharing amount. All of these amounts were either used to pay the Plan recordkeeper (Great-West) or were credited back to participant accounts.

Thus, the Plan's use of higher cost share classes does not plausibly suggest a breach of fiduciary duty. Instead, it is consistent with an entirely benign explanation: the Plan's use of revenue sharing, which is a common and acceptable practice for 401(k) plans. *See, e.g.*, *Leimkuehler*, 713 F.3d at 909; *White*, 2017 WL 2352137, at *12–14 (dismissing claim on this theory); *Divane*, 953 F.3d at 989 (finding "nothing wrong" with use of expense ratios to pay recordkeeper costs). When revenue sharing is used, the amounts are used to "help defray participants' recordkeeping and other administrative costs." *Divane*, 953 F.3d at 989 n.9. Here, the Plan used the incremental fees associated with the higher-cost share classes to pay Plan expenses instead of charging them directly to participants or rebated them directly back to Plan participants' individual accounts. Friedman Decl., Ex. 3 at 5 (2018 Form 5500). Because the revenue sharing amounts were used to benefit the Plan and its participants, it is implausible to claim that use of the higher cost share classes was imprudent.

12

Vail pointed this out in the meet-and-confer relating to the original complaint, and Plaintiff responded by adding Paragraph 37, which now admits that the Plan used revenue sharing, but alleges that the "savings represented by these rebates did not fully compensate the Plan for the higher costs of the share classes." The Amended Complaint does not explain what this means, and Plaintiff could not do so at the recent meet-and-confer either. There is no explanation because all of the revenue sharing payments benefited participants.

For example, during the purported class period, if the revenue sharing associated with higher share classes equaled $100 and the recordkeeper charged $75 for administrative services, Vail used $75 to pay the recordkeeper and rebated $25 to participants. In other words, *all* of the revenue sharing has *always* been used to benefit participants and the Plan. The Court does not need discovery or a trial to confirm this simple point. *White*, 2016 WL 4502808, at *3 (revenue sharing allegations did not state a claim for breach of fiduciary duty under ERISA). This theory should be dismissed.

### C. Plaintiff's Excessive Expense Claim is Implausible.

The Amended Complaint also alleges that the total fees charged to Plan participants were higher than other comparable plans, AC ¶ 32, but that does not appear to be an independent theory—it appears to be derivative of Plaintiff's share-class claims. Indeed, in Paragraph 56, Plaintiff alleges that the fees could have been "significantly reduced simply by electing a different share class" for the challenged funds. AC ¶ 56. In other words, this claim is simply duplicative of Plaintiff's share class claim, and fails for the same reasons.

But even if Plaintiff meant for this to be a separate, stand-alone theory of imprudence, the theory still fails. The figures in Paragraph 32 apparently compute the total costs of the Plan based on the expense ratios charged by every investment option, weighted by the amount of assets in each option, and then compare the total costs to those of other plans. But the problem with that

13

sort of comparison is that the total cost figures depend on the amount of assets invested in each option, and participants—not Vail—control that. In a defined contribution plan, participants each have their own account, and they decide how to allocate their monies among the available investment options. *Divane*, 953 F.3d at 983. If participants choose more expensive options, the weighted average goes up, and if they choose less expensive options, the weighted average goes down. So Vail cannot directly control total plan costs, and therefore alleging that the Plan's total cost was higher than some unspecified group of other plans does not plausibly suggest a breach.[5]

### D.     The Complaint Fails to State a Claim for Breach of the Duty of Loyalty.

The Amended Complaint also alleges that Vail breached its duty of loyalty, but there are no plausible allegations to support that claim. To state a claim, the Amended Complaint cannot just repeat the allegations of fiduciary breach, but instead has to "allege plausible facts supporting an inference that [Vail] acted *for the purpose of* providing benefits to itself or some third party." *Cassell v. Vanderbilt Univ.*, 285 F. Supp. 3d 1056, 1061-62 (M.D. Tenn. 2018). It is not enough to show that the *result* of some fiduciary action was fees paid to a third-party; a complaint has to allege that the *reason* the fiduciary took the action was to benefit a third party.

Here, there are no allegations that Vail acted for the purpose of benefitting either itself or TRP. Vail pointed out in the original meet-and-confer that the complaint made no such allegations, so Plaintiff responded by adding Paragraph 61, which alleges that Vail's decision to offer the challenged funds resulted in Vail "favor[ing] the fund providers over the Plan's participants." But that does not state a loyalty claim, because the fact that a fiduciary's decision

---

[5] The Amended Complaint provides no information about how the "comparator plans" were selected, and that omission is significant because, according to the Department of Labor, there are more than 1,000 plans that have between 5,000 and 10,000 participants, and more than 3,000 plans with assets between $250 million and $500 million. *See* Dep't of Labor Form 5500 Data Sets   (https://www.dol.gov/agencies/ebsa/about-ebsa/ouractivities/public-disclosure/foia/form-5500-datasets) (last visited July 13, 2020). Thus, the Amended Complaint has chosen only a tiny group of comparator plans.

had the *result* of paying fees to a mutual fund provider is insufficient to show that was the purpose of the decision. *See, e.g., id.*; *White*, 2016 WL 4502808, at *5. If pointing to the result were enough, every fiduciary breach claim involving investments would automatically establish a breach of the duty of loyalty, which makes no sense. In addition, and regardless, the investments here did not favor the fund provider anyway because, as shown above, Vail rebated revenue sharing amounts either to the Plan (prior to 2018) or the participants (in 2018 and later).

Given the lack of allegations that the Vail acted to benefit any mutual fund provider, the loyalty claim should be dismissed, as other courts have done at the pleading stage. *See, e.g., Cassell*, 285 F. Supp. 3d at 1062-63; *Ferguson v. Ruane Cunniff & Goldfarb Inc.*, No. 17-CV-6685, 2019 WL 4466714, at *4 (S.D.N.Y. Sept. 18, 2019); *Munro v. Univ. of S. Cal.*, No. 16-cv-6191, 2019 WL 4543115, at *2–3 (C.D. Cal. Aug. 27, 2019).

## CONCLUSION

Accordingly, the Court should dismiss Plaintiff's Amended Complaint with prejudice.

DATED: July 17, 2020                    SIDLEY AUSTIN LLP

By: */s/* Mark B. Blocker
    Mark B. Blocker
    Benjamin I. Friedman
    Sidney Austin LLP
    One South Dearborn
    Chicago, Illinois  60603
    Telephone: (312) 853-2030
    Facsimile:  (312) 853-7036
    Email: mblocker@sidley.com
           benjamin.friedman@sidley.com

    Michael J. Hofmann
    Bryan Cave Leighton Paisner LLP
    1700 Lincoln Street, Suite 4100
    Denver, Colorado 80203
    Telephone: (303) 861-7000
    Email: Michael.Hofmann@bclplaw.com

    *Attorneys for Defendant The Vail Corporation*

15