IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 1:20-cv-00500-RBJ

DEBRA KURTZ, individually, and as representative of a Class of Participants and Beneficiaries, on Behalf of the Vail Resorts 401(k) Retirement Plan,

      Plaintiff,

v.

THE VAIL CORPORATION,

      Defendant.

---

## ORDER ON DEFENDANT'S MOTION TO DISMISS

---

This matter is before the Court on defendant's motion to dismiss. ECF No. 34. For the reasons discussed below, defendant's motion is GRANTED.

### I. FACTUAL BACKGROUND

The following facts are alleged by plaintiff in her Amended Complaint, ECF No. 30, and are assumed to be true for purposes of the pending motion. Plaintiff Debra Kurtz is a resident of New York state and a former employee of defendant Vail Corporation. *Id.* at ¶11. Defendant Vail Corporation ("Vail"), which also does business as Vail Associates, Inc., is a Colorado corporation with its headquarters in Broomfield, Colorado. Vail is the sponsor of the Vail Resorts 401(k) Retirement Plan ("the Plan"). *Id.* at ¶14. Plaintiff participated in the Plan while employed at Vail. *Id.* at ¶11.

Plaintiff brings her case as a putative class action under the Employment Retirement

Income Security Act of 1974 ("ERISA").  Plaintiff seeks to certify a class for a period that begins six years before the commencement of this action, i.e. February 4, 2016, and ends on the date of judgment.  *Id.* at ¶¶4, 63.  Plaintiff alleges that the Plan is a "defined contribution" plan that falls under 29 U.S.C. §§ 1102(2)(A) and 1002(34) of ERISA, and that defendant Vail is a fiduciary with authority over and responsibility for the control, management, and administration of the Plan under 29 U.S.C. § 1102(a).  *Id.* at ¶¶15–16.  In a defined contribution plan the fiduciary manages the overall plan and has exclusive control over the menu of investment options available to participants.  *Id.* at ¶50.  Participants choose which investments to make among those options.  Both participants and the employer make contributions.  The value of participants' investments is determined by market performance of the contributions minus expenses, and thus the ultimate benefit participants derive from the plan fluctuates (unlike in a defined benefit plan in which the benefits are fixed).  *Id.* at ¶¶15–16.

Since at least 2013 the Plan had more than 5,000 participants and over $170 million in assets entrusted to the care of defendant as fiduciary.  At the end of 2018, the Plan had 8,276 participants and over $309 million in assets.  The Plan offered twenty-seven investment choices to its participants.  *Id.* at ¶26.

Plaintiff first alleges that the Plan's fees were excessive compared to other comparable 401(k) plans that had similar numbers of participants and similar amounts of assets.  The Plan charged participants fees that were 90 percent more than comparable plans.  For example, in 2017 the Plan charged $271 per participant, or 0.63% of assets under management, compared to a mean of $179 per participant, or 0.2% of assets under management, across nineteen comparator plans that had 5,000 to 10,000 participants.  The mean fees for a group of twenty-one comparator

plans with an asset range between $250 and $500 million was 0.43% of assets under management. *Id.* at ¶¶27, 32.

Plaintiff next alleges that the Plan paid unreasonably high fees for investments when less expensive, better performing investments were available. The investment options available to Vail's Plan participants were typically mutual funds. *Id.* at ¶33. Many mutual funds offer different "classes" of shares in a single mutual fund that are more or less expensive. More expensive shares are generally targeted towards smaller investors that have fewer assets and thus less bargaining power, whereas less expensive shares are targeted towards larger investors with more assets and thus more bargaining power. Despite the difference in cost, the share classes are otherwise identical, as they hold identical investments and have the same manager. *Id.*

As of December 31, 2018, the Plan offered participants share classes from twenty-seven investments in which they could invest. Plaintiff compared the Plan's investment options to other investment class shares it could have offered based on "expense ratios," which express each option's fees as a percentage of assets under management. *Id.* at ¶36. Plaintiff claims that defendant's Plan was sufficiently large—in terms of assets—that it could invest in the cheapest share classes available, but that instead defendant offered share classes that were more expensive. Specifically, investment management firm T. Rowe Price offered fifteen of the twenty-seven investment options of the Plan. It offered different share classes that charged lower fees and had better rates of return than the share classes that defendant selected for inclusion in the Plan options. Defendant was large enough to qualify for these cheaper share classes, and thus could have, but did not, offer them to Plan participants. Plaintiff alleges that as a result of these choices, participants necessarily paid higher costs and received lower returns for

their investments.  *Id.* at ¶¶36, 38–39.

Plaintiff's third allegation is that defendant failed to offer lower cost passively managed funds to participants.  According to plaintiff, higher cost mutual funds rarely outperform less expensive passively managed mutual funds over the long term.  *Id.* at ¶¶41–42.  Plaintiff again compared the Plan's actual options with potential alternative options.  She asserts that the expense ratios of the Plan's options were more expensive compared to comparable passively managed and actively managed funds of the same investment type.  In many of the examples plaintiff gives, all of which compare T. Rowe Price options to Vanguard options, the expense ratio of the Plan's option is three times as high as that of the comparable option.  *Id.* at ¶43–44.  Plaintiff also asserts that defendant's selection of actively managed investment options over passively managed options was unjustifiable.  This is because the actively managed funds (which defendant offered as options) usually significantly underperformed, and never significantly outperformed, the passively managed alternatives.  *Id.* at ¶45.

Plan participants paid the investment offerings' fees.  However, Vail had a responsibility as the Plan's fiduciary to ensure these fees were reasonable.  *Id.* at ¶49.  Plaintiff alleges that together, the various decisions defendant made regarding what investment options to offer led to a selection of options that had higher fees and costs.  In a defined contribution plan such as this one, a participant's benefits at retirement are the value of their own investment accounts minus expenses, and thus high or unreasonable fees impair the value of the participant's investment benefits.  Plaintiff thus contends that defendant's decisions as fiduciary of the Plan cost participants millions of dollars of their retirement savings.  *Id.* at ¶¶46–47, 50–51.

At the time she was a participant in the Plan plaintiff did not know how defendant

selected investment options, nor whether or how defendant monitored the options for prudence, as it was required to do so as a fiduciary. She also had no knowledge of how the Plan's options compared to other lower-fee or better-performing investment options not offered through the Plan. *Id.* at ¶48.

## II. PROCEDURAL BACKGROUND

Plaintiff Debra Kurtz first filed this case on February 24, 2020. ECF No. 1. She filed an amended complaint on May 29, 2020. ECF No. 30. In her amended complaint she brought a single claim for breach of fiduciary duties of loyalty and prudence under 29 U.S.C. § 1104(a)(1)(A)–(B), (D) against defendant Vail Corporation. She brought this case as a class action. *Id.* at ¶¶62–81. On July 17, 2020 defendant filed a motion to dismiss. ECF No. 34. Plaintiff responded on August 6, 2020. ECF No. 36. Defendant replied on August 20, 2020. ECF No. 39. The motion is thus ripe for review.

## III. STANDARDS OF REVIEW

### A. <u>Rule 12(b)(1)</u>

A court may dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1). Standing is a question of subject matter jurisdiction, and thus a basis for 12(b)(1) dismissal. A plaintiff has constitutional standing when (1) she has suffered an injury in fact, (2) there is a causal connection between the injury and the conduct complained of, and (3) it is likely that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–61. An "injury in fact" is an invasion of a legally protected interest that is concrete, particularized, and actual or imminent as opposed to conjectural or hypothetical. *Id.* Although the plaintiff bears the burden of establishing standing, a court must accept as true all well-

pleaded facts and construe all reasonable allegations in the light most favorable to the plaintiff. *United States v. Colorado Supreme Court*, 87 F.3d 1161, 1164 (10th Cir. 1996) (citations omitted).  "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim."  *Id.* at 1165 (quoting *Lujan*, 504 U.S. at 561).

### B.  <u>Rule 12(b)(6)</u>

To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While the Court must accept the well-pled allegations of the complaint as true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002), conclusory allegations are not entitled to be presumed true.  *Iqbal*, 556 U.S. at 681.  However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard.  *See, e.g.*, *Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

If the parties rely on materials found outside the four corners of the complaint, the court has the discretion to convert a motion to dismiss to one for summary judgment.  If it does so the court must inform the parties and permit them to meet all factual allegations with countervailing evidence.  *See* FED. R. CIV. P. 12(d); *Burnham v. Humphrey Hospitality Reit Trust, Inc.*, 403 F.3d

709, 713 (10th Cir. 2005).  The court may consider evidence beyond the complaint without converting a motion to dismiss to one for summary judgment if the documents are central to the claims, referred to in the complaint, and if the parties do not dispute their authenticity.  *See Cty. of Santa Fe, N.M. v. Pub. Serv. Co. of N.M.*, 311 F.3d 1031, 1035 (10th Cir. 2002).

## IV. ANALYSIS

Defendant moves to dismiss this case on two grounds.  First, it argues that plaintiff lacks standing to bring her claim as to any of the Plan's offered funds in which she did not invest. Second, defendant argues that plaintiff fails to state a claim under Rule 12(b)(6) for which relief can be granted.  I address each of these arguments in turn.

In its motion defendant refers to documents outside the four corners of the complaint. These are the Plan's Form 5500 for 2014; the Plan's Form 5500 for 2018; the May 2020 T. Rowe Price Growth Stock Fund Prospectus; and plaintiff's Plan statement for October through December 2018.  ECF Nos. 35-1, 35-2, 35-3, and 35-4.  Plaintiff does not contest the authenticity of any of these documents.  The 2014 and 2018 Form 5500s are government-mandated filings and publicly available.  I may therefore take judicial notice of them without converting this motion to one for summary judgment.  *See, e.g. Troudt v. Oracle Corp.*, No. 116CV00175-REB-CBS, 2017 WL 663060, at *4 (D. Colo. Feb. 16, 2017) (taking judicial notice of a Form 5500 for 2014), *report and recommendation adopted*, No. 116CV00175-REB-CBS, 2017 WL 1100876 (D. Colo. Mar. 22, 2017).  I may also consider them because they are documents referred to in the complaint and central to the plaintiff's claims.  *Cty. of Santa Fe*, 311 F.3d at 1035; *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).  I also take judicial notice of the 2020 T. Rowe Price Growth Stock Fund Prospectus because it is an SEC filing and a public record.  *In re*

*Oppenheimer Rochester Funds Grp. Sec. Litig.*, 838 F. Supp. 2d 1148, 1156 (D. Colo. 2012) ("In securities cases, moreover, a court may take judicial notice of the contents of SEC filings that are a matter of public record.").  I do not consider or take judicial notice of the remaining document, as it does not fall under these exceptions.

### A.  Standing

To bring a suit under ERISA, a plaintiff must show both constitutional standing and a cause of action (statutory standing) under the ERISA statute.  *E.g. Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016).  Plaintiff argues that she has standing under 29 U.S.C. §§ 1132(a)(2) and 1109(a), ERISA provisions that establish statutory standing.  Some courts have noted that actions brought under § 1132(a)(2) are derivative in nature—they focus on the injury to the Plan instead of to the individual Plan participants.  *E.g. Tatum v. R.J. Reynolds Tobacco Co.*, 254 F.R.D. 59, 65 (M.D.N.C. 2008).  However, defendant does not dispute that plaintiff has statutory standing.  Instead it asserts that plaintiff lacks constitutional standing because she cannot meet the injury in fact requirement of *Lujan*.

Defendant argues that plaintiff only invested in five of the fifteen Plan options that she challenges.  As a result, defendant contends, plaintiff has no standing to challenge the remaining ten options because she has not alleged a "concrete and particularized" injury in fact.  ECF No. 34 at 5–6.  Plaintiff focuses her argument on ERISA provisions, contending that she has standing under 29 U.S.C. § 1132(a)(2).  That sections states a "civil action may be brought . . . by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title."  ECF No. 36 at 6.  She asserts that she does not bring independent claims for each of the challenged funds but instead brings a single claim for mismanagement of the entire Plan.

The parties cite to a host of conflicting decisions on the issue of whether a plaintiff has standing to bring claims related to Plan options in which he or she did not invest.  There is no Tenth Circuit authority on point for this issue.  After my own review of the case, I conclude that this case is more similar to ones in which courts have found standing to exist even without plaintiff investing in each individual option.  For example, in *Larson v. Allina Health Sys.* plaintiff-participants in a defined-contribution plan sued the fiduciary for breach of its fiduciary duties.  The court held the plaintiffs had standing to sue on behalf of the entire plan and other participants even though they hadn't individually invested in each possible fund.  350 F. Supp. 3d 780, 791 (D. Minn. 2018).  *Larson* pointed to Eighth Circuit precedent to support its conclusion.  It relied on *Braden*, which involved similar breach of fiduciary duty claims.

In *Braden*, the plaintiff alleged that defendants failed to adequately evaluate the defined contribution Plan's investment options, because many of the fund options charged excessive fees and yet underperformed lower-cost alternatives.  *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 589 (8th Cir. 2009).  Defendants argued that plaintiff lacked standing to bring claims for the entire time period because he only started contributing at a point in time after the starting date used to define the class.  The district court dismissed on this basis.  The Eighth Circuit reversed.  The appellate court reasoned that plaintiff had constitutional standing because he alleged actual injury to his own plan account, and the issue of whether he could represent claims for the time period prior to his contributions related to his cause of action, not standing.  *Id.* at 591–93.

The *Braden* court's reasoning is not directly applicable because here the issue is plaintiff's non-investment in certain Plan options, not investment timing.  However, *Krueger* extended *Braden* to the issue before this Court.  The *Krueger* plaintiffs alleged that fiduciaries of

a defined contribution plan selected and retained funds despite their relatively high expenses and poor performance, selected higher-cost versions of those funds instead of lower-cost versions, and failed to negotiate a reasonable record-keeping fee. *Krueger v. Ameriprise Fin., Inc.*, 304 F.R.D. 559, 564 (D. Minn. 2014). The court rejected defendants' argument that plaintiffs lacked standing to pursue claims in which they did not invest, or in which they did invest but that outperformed the benchmark. It wrote that "a plaintiff's standing to sue a plan's fiduciaries, and that same plaintiff's ability to seek relief that goes beyond his own injuries, are separate issues." *Id.* at 567. The court concluded that whether plaintiffs could properly represent class members whose injuries may be based on funds different than those in which plaintiff invested or suffered injuries was an issue of class certification, not standing. *Id.* Here too, I conclude that plaintiff's non-investment in certain funds is a class certification question, not a standing one.

Other decisions from the First, Second, Third, Fourth, Eighth, and Ninth, circuits come to the same conclusion. For example, in *Hay* the court wrote that "Plaintiff alleges in her complaint that Defendants mismanaged the Plan by choosing and maintaining Transamerica funds, as well as 18 other mutual funds, despite there being less costly options, a potential conflict of interest, better performing investments, and a lack of variety in the offered funds." *Hay v. Gucci Am., Inc.*, No. 2:17-CV-07148, 2018 WL 4815558, at *1 (D.N.J. Oct. 3, 2018). Based on this mismanagement, the court explained, plaintiff alleged she was subject to excessive fees and underperformance. The court found that plaintiff had standing because she alleged "an injury rooted in Defendants' conduct in managing all the funds as a group." *Id.* at *4. Here too, plaintiff alleges mismanagement of the entire Plan and all its funds through the options it provided, not breach related to an individual fund or funds. *See also Cryer v. Franklin*

*Templeton Res., Inc.*, No. C 16-4265 CW, 2017 WL 4023149, at *4 (N.D. Cal. July 26, 2017)

(holding plaintiff had standing to sue for funds in which he did not invest or that outperformed

because "the lawsuit seeks to restore value to and is therefore brought on behalf of the Plan.");

*McDonald v. Jones*, No. 4:16 CV 1346 RWS, 2017 WL 372101, at *2 (E.D. Mo. Jan. 26, 2017)

(citing to *Braden* and concluding "a plan participant may seek recovery for the plan even where

the participant did not personally invest in every one of the funds that caused an injury to the

plan"); *Glass Dimensions, Inc. v. State St. Bank & Tr. Co.*, 285 F.R.D. 169, 175 (D. Mass. 2012)

("Plaintiff has established constitutional standing with respect to the 257 funds that it did not

purchase."); *Taylor v. United Techs. Corp.*, No. 3:06CV1494(WWE), 2008 WL 2333120, at *3

(D. Conn. June 3, 2008) (holding plaintiffs fulfilled standing "[b]ecause a retirement plan is an

aggregation of its participants' individual accounts" and thus "any loss to the Plan causes a loss

to the Plan's participants."); *Walsh v. Marsh & McLennan Cos., Inc.*, No. CIV. JFM-04-0888,

2006 WL 734899, at *1 (D. Md. Feb. 27, 2006) (finding that it did not matter for constitutional

standing that plaintiff did not invest in every fund offered).

 Many of the authorities cited by defendant are distinguishable.  For example, the court's

holding in *Meridian Funds* was based on plaintiff's non-investment of seven other funds that

were not ERISA funds at all.  *In re Meridian Funds Grp. Sec. & Employee Ret. Income Sec. Act

(ERISA) Litig.*, 917 F. Supp. 2d 231, 234 (S.D.N.Y. 2013).  But here all of the mentioned funds

are ones that were offered as part of an ERISA Plan.  The court in *Dezelan* ruled that plaintiff

lacked standing for claims related to general accounts,  versus a "Separate Account" in which she

invested, because neither she nor the Plan had any relationship to or interest in the general

account funds.  *Dezelan v. Voya Ret. Ins. & Annuity Co.*, No. 3:16-CV-1251, 2017 WL 2909714,

at *6 (D. Conn. July 6, 2017).  By contrast, here the Plan has an interest in and relationship to every fund which it offers as an option.

In *Barrett*, the only cited case from this jurisdiction, this Court addressed a claim based on imprudent investment in a specific fund in which plaintiff had never invested.  The court ruled that plaintiff lacked standing because no recovery on that fund would ever inure to him. *Barrett v. Pioneer Nat. Res. USA, Inc.*, No. 17-CV-1579-WJM-NYW, 2018 WL 3209108, at *1 (D. Colo. June 29, 2018).  Notably, the decision found that plaintiff *did* have standing to bring his claims regarding excessive fees.  In addressing lack of standing for the Money Market Fund claim, it wrote that the complaint "does not allege that all investment choices or some sensibly grouped subset were offered imprudently. It alleges only that the Money Market Fund was an imprudent offering alongside the Retirement Trust." *Id.* at *3.  *Barrett* is thus also dissimilar to this case because plaintiff's claims are about the Plan overall or at least, a large subset of offered funds, not a single fund.  Recovery here would inure to plaintiff, unlike in *Barrett*.

Defendant does cite to a few decisions in which courts held that plaintiffs lacked standing on facts similar to those here.  *See Patterson v. Morgan Stanley*, No. 16-CV-6568 (RJS), 2019 WL 4934834, at *1 (S.D.N.Y. Oct. 7, 2019); *Wilcox v. Georgetown Univ.*, No. CV 18-422 (RMC), 2019 WL 132281, at *1 (D.D.C. Jan. 8, 2019); *Marshall v. Northrop Grumman Corp.*, No. CV 16-06794 AB (JCX), 2017 WL 2930839, at *8 (C.D. Cal. Jan. 30, 2017); *In re UBS Erisa Litig.*, No. 08-CV-6696 RJS, 2014 WL 4812387, at *6 (S.D.N.Y. Sept. 29, 2014), *aff'd sub nom. Taveras v. UBS AG*, 612 F. App'x 27 (2d Cir. 2015).  Nonetheless, I find that the bulk of authority supports plaintiff's position.

Defendant also relies on a 2020 Supreme Court case, *Thole v. U.S. Bank N.A.*, for its

standing argument.  140 S. Ct. 1615 (2020).  In *Thole* the plaintiffs sued for fiduciary

mismanagement of a plan under ERISA.  The court held that plaintiffs lacked Article III standing

because, regardless of whether plaintiffs lost or won the suit, their monthly payments from the

plan would not change one penny.  As a result, plaintiffs had suffered no concrete injury.  *Id.* at

1619.  Defendants contend this case applies directly to the facts before this Court.  But the Plan

here is a defined contribution plan, not a defined benefits plan.  The Supreme Court explained

that it was of "decisive importance" that plaintiffs were participants in a defined-benefit plan

where payments do not fluctuate based on fiduciaries' good or bad investment decisions.  In

addressing plaintiffs' argument it stated that "[t]he basic flaw in the plaintiffs' trust-based theory

of standing is that the participants in a defined-benefit plan are not similarly situated to the

beneficiaries of a private trust or to the participants in a defined-contribution plan." *Id.*

By contrast, if plaintiff were to win her suit here, monthly payments from the Plan *would*

change because the Plan participants' benefits are not fixed.  Mismanagement of the Plan by

defendant—which is what plaintiff alleges—shaped the investment options available to Plan

participants and the fee amounts by which investment values were reduced.  These changes

purportedly reduced retirement funds available through the Plan to plaintiff, suggesting an actual

injury.  Relatedly, a change in Plan management by defendant could increase the value of any or

all of the Plan's fund options among which plaintiff chose, and thus increased returns would

inure first to the Plan and then indirectly to plaintiff.  This is exactly the type of plan the

Supreme Court distinguished from in its holding in *Thole*, and therefore *Thole* does not control.

I conclude that plaintiff has both statutory and constitutional standing to bring this suit

against defendant for alleged breach of fiduciary duties under ERISA.  However, because I find

below that her claim fails under Rule 12(b)(6), this issue is ultimately irrelevant.

### **B.  Rule 12(b)(6)**

In addition to its argument on standing, defendant contends that the case should be dismissed because plaintiff does not allege sufficient facts to meet the pleading requirements of Rule 12(b)(6).  Plaintiff brings a single claim in her amended complaint: breach of the duties of loyalty and prudence under 29 U.S.C. § 1104(a)(1)(A)–(B), (D).  ECF No. 30 at ¶¶74–81.

Plaintiff alleges that the Vail Resorts 401(k) Retirement Plan constitutes a plan covered by ERISA under 29 U.S.C. § 1002(21)(A).  ECF No. 30 at ¶4.  Defendant does not contest this.  *See generally* ECF Nos. 34, 39.  Nor does Vail contest that it is a fiduciary as defined by ERISA under 29 U.S.C. §§ 1002(21) or 1102(a)(1).  ECF Nos. 34, 39.  Instead, defendant argues that plaintiff's complaint fails to allege facts sufficient to constitute a breach of its fiduciary duties under ERISA.

ERISA imposes strict standards of duty and loyalty on fiduciaries of ERISA Plans. Section 1104(a)(1) provides in relevant part:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and –
> (A) for the exclusive purpose of:
> (i) providing benefits to participants and their beneficiaries; and
> (ii) defraying reasonable expenses of administering the plan;
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims. . . .

Section 1109(a) provides in relevant part:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations or duties imposed upon by fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other

equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. . . .

Furthermore, "[a] civil action may be brought . . . by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of [ERISA] . . . ." 29 U.S.C. § 1132(a)(2).

Plaintiff brings a putative class action as a participant on behalf of herself and other participants against Vail. "To properly assert an ERISA claim for breach of fiduciary duty under 29 U.S.C. § 1104(a)(1), a plaintiff must allege facts that plausibly demonstrate that: (1) the defendant was a plan fiduciary, (2) the defendant breached its fiduciary duty, and (3) that the breach resulted in harm to the plaintiff." *Troudt*, 2017 WL 663060, at *4. *See also Larson*, 350 F. Supp. 3d at 793. Though plaintiff lumps the duties of loyalty and prudence together in her complaint, both defendant and plaintiff address them separately in their briefs. I therefore address them separately as well.

1. Breach of duty of prudence

Under ERISA a "prudent" fiduciary must act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). The fiduciary must also act "in accordance with the documents and instruments governing the plan" insofar as those directives are consistent with ERISA's other requirements. 29 U.S.C. § 1104(a)(1)(D). Fiduciaries have "a continuing duty to monitor investments and remove imprudent ones . . . ." *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1828 (2015).

As another judge in this district has written, to establish a claim for breach of the duty of prudence a plaintiff must allege that a fiduciary's "investment decisions—in the conditions

prevailing at the time, and without the benefit of hindsight—are such that a reasonably prudent fiduciary would not have made that decision as part of a prudent, whole-portfolio, investment strategy that properly balances risk and reward, as well as short-term and long-term performance." *Birse v. CenturyLink, Inc*, No. 17-CV-02872-CMA-NYW, 2019 WL 1292861, at *3 (D. Colo. Mar. 20, 2019) (citing *Pension Benefit Guard Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 716 (2d Cir. 2013)).  As long as a fiduciary meets the prudent person standard, ERISA does not impose a "duty to take any particular course of action if another approach seems preferable." *Diduck v. Kaszycki & Sons Contractors, Inc.*, 874 F.2d 912, 917 (2d Cir. 1989).

Instead, a plaintiff must show that a more prudent Plan management process would have avoided the alleged harm, which "necessarily require[s] a plausible allegation explaining how no reasonable fiduciary could conclude that removing such investments would not be likely to do more harm than good to the plan and its participants." *In re SunEdison, Inc. ERISA Litig.*, No. 16-MC-2744(PKC), 2018 WL 3733946, at *8 (S.D.N.Y. Aug. 6, 2018) (citations omitted).  In essence, this requires alleging facts that plausibly establish that no reasonable fiduciary would have retained a set of investments had the fiduciary engaged in proper monitoring, and that abandoning the investments could have presented the plans losses. *Kopp v. Klein*, 894 F.3d 214, 221 (5th Cir. 2018).  It is not sufficient to simply allege that an investment did poorly, and, therefore, a plaintiff was harmed—relative underperformance is insufficient to state a claim.

Importantly, "the prudence test—the Prudent Man Rule—is one of conduct, and not a test of the result of performance of the investment." *Donovan v. Cunningham*, 716 F.2d 1455, 1467 (5th Cir. 1983); *accord Bunch v. W.R. Grace & Co.*, 555 F.3d 1, 7 (1st Cir. 2009); *Pension*

*Benefit Guar. Corp. ex rel. St. Vincent v. Morgan Stanley Inv. Mgmt.*, 712 F.3d 705, 716 (2nd

Cir. 2012) (noting the standard focuses on a fiduciary's conduct, not investment results, and asks

"whether a fiduciary employed the appropriate methods to investigate and determine the merits

of a particular investment."). Courts therefore focus on the process the fiduciary uses rather than

the outcome of the Plan or investments. *Id.* However, plaintiffs may face challenges in

gathering information about a fiduciary's procedure before discovery. Thus, courts have

recognized that even when the alleged facts do not specifically address the process by which a

Plan is managed, a fiduciary breach claim may still survive a motion to dismiss if the court can

reasonably infer from circumstantial factual allegations that the process was flawed. *Pension

Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv.

Mgmt. Inc.*, 712 F.3d 705, 718 (2d Cir. 2013); *Braden*, 588 F.3d at 596.

Much of plaintiff's complaint is taken up by statements explaining what ERISA requires,

or providing generic background about performance of different types of investment funds. ECF

No. 30 at ¶¶1–2, 18–25, 30–31, 33–35, 40–42, 50–55, 57–58. The deceptively long complaint

can thus be boiled down to a few factual allegations.

The first allegation is that in 2018, for fifteen of the twenty-seven Plan fund options, the

issuer T. Rowe Price offered different share classes with lower fees and better rates of return. *Id.*

at ¶36, 38–39. Plaintiff alleges that these cheaper share classes were offered in earlier years as

well. *Id.* Second, plaintiff alleges that in 2019, fourteen T. Rowe Price fund options were more

expensive "by multiples" than comparable passively and actively managed funds from

Vanguard. *Id.* at ¶43. Plaintiff contends this is true for all years of the putative class period. *Id.*

at ¶44. Third, plaintiff alleges that as of May 2020 eight of the T. Rowe Price funds were

outperformed by comparable Vanguard funds. *Id.* at ¶45. The complaint also states that "the Plan's fiduciaries cannot justify selecting actively managed funds over passively managed ones." *Id.* Fourth, plaintiff alleges that in 2017 fees charged to Plan participants were higher than fees charged in ninety percent of comparator plans. *Id.* at ¶32. Plaintiff also states that "[c]omparisons in prior years show similar variances" with Vail's Plan being more costly. *Id.*

Defendant's motion asserts that plaintiff has failed to plead sufficient facts to surpass the 12(b)(6) standard. I agree. While certainly specific, plaintiff's allegations are insufficient to support a claim for breach of fiduciary duty. Nowhere in the complaint does plaintiff allege anything imprudent about defendant's process. In fact, it does not address at all Vail's process for selecting or retaining fund options, monitoring expenses, or managing the overall Plan. Nor does it provide any factual allegations regarding whether defendant employed the appropriate methods to investigate and determine the merits of any investments. The allegations related to three-year investment returns depend on hindsight and say nothing about the information defendant had available to it at the time it was making decisions regarding the Plan.

Plaintiff thus asks this Court to infer that defendant acted imprudently as a fiduciary based on circumstantial allegations that the Plan did not offer the lowest-share class for certain funds, and that certain funds were more expensive than alternatives. *See e.g. Pension Ben. Guar. Corp.*, 712 F.3d at 718. But I cannot infer from plaintiff's allegations that defendant imprudently managed the Plan. Plaintiff points to fifteen funds that she alleges are more expensive than possible alternatives, but there are an additional twelve she takes no issue with at all. She does not claim that *all* of the funds offered were too expensive or poorly-performing. A Plan fiduciary is tasked with a "whole-portfolio, investment strategy that properly balances risk and

reward, as well as short-term and long-term performance." *Birse*, 2019 WL 1292861, at *3.

That mandate will naturally involve selecting funds with a range of return and expense profiles.

A fiduciary is not required to "scour the market to find and offer the cheapest possible fund," as

there are other factors for which a fiduciary—and a participant—might want to optimize besides

cost. *Hecker v. Deere & Co.* 556 F.3d 575, 586 (7th Cir. 2009). Finally, plaintiff puts forth no

allegations of self-interested dealing, kickbacks, or inappropriate influence, from which the

Court could more readily derive an inference of fiduciary breach. Thus, while circumstantial

allegations are sometimes enough to survive a motion to dismiss, here they are not.

    In comparing this case to others, neither party cites to any Tenth Circuit precedent on

point. Nor have I found any. Instead the parties direct me to a few cases from this district and a

wide range of decisions from other circuits. I start by comparing the three cases I have found

from this district as they are more persuasive. In two of those the court denied the motion to

dismiss, though in one the decision was "extraordinarily close." In the third case the motion to

dismiss was granted.

    In *Ramos* the plaintiffs alleged that the fiduciary provided investment options within the

Plan that were imprudent, because they had poor performance relative to the other investment

options available and had expense ratios in excess of other options. *Ramos v. Banner Health*,

No. 15-CV-2556-WJM-MJW, 2017 WL 4337598, at *6 (D. Colo. Sept. 29, 2017). The Court

denied the motion to dismiss because defendant's arguments sought to "disprove Plaintiffs'

allegations on their merits or to put into evidence facts beyond what Plaintiffs have pled." *Id.*

Importantly, however, the plaintiffs pled more than just excessive fees and imprudent investment

options. They also noted that many of the investment options were issued by Fidelity, who was

also a fiduciary of the Plan, such that investment decisions drove revenues and profits to Fidelity as kickbacks.  Conversely, plaintiff has alleged no such interested party or relationship here.

In *Troudt* the plaintiffs alleged that defendants breached their fiduciary duty by causing the Plan to pay unreasonable administrative expenses, and by providing three investment options that underperformed and by not justifying their selection or retention."  *Troudt*, 2017 WL 663060, at *2.  The magistrate judge analyzed this case only under the generic 12(b)(6) standard—he did not analyze or compare to other cases alleging breach of a duty of prudence. He recommended denying the motion to dismiss.  *Id.* at *1.  In accepting the recommendation and denying the motion, Judge Blackburn wrote that "[i]t is clear . . . [the magistrate judge] believed this case to be extraordinarily close and exceptionally context-specific," and that his own review "confirm[ed] that characterization, in spades."  *Troudt*, 2017 WL 1100876, at *1. While this case is also close, my analysis of a broader range of case law on the issue leads me to conclude that it must come out the other way.

Finally, in *Birse*, the magistrate judge recommended dismissing the case because plaintiffs failed to allege imprudence in the fiduciary's process in designing the Plan and selecting and retaining potential investments.  *Birse v. CenturyLink, Inc.*, No. 17-CV-02872-CMA-NYW, 2018 WL 6603961, at *5 (D. Colo. Nov. 19, 2018), *report and recommendation adopted in part, rejected in part sub nom. Birse*, 2019 WL 1292861.  The court emphasized that plaintiffs improperly relied on hindsight to allege that defendant should have offered a better performing fund, instead of "how an investigation would show an improvident process."  *Id. Birse*, 2019 WL 1292861 at *5.  They generally alleged issues with outcome, not process.  Judge

Arguello adopted the recommendation and dismissed the case.[1]  Similarly, here plaintiff also alleges many investment outcome-based allegations.  Her allegations related to process are all inferences about defendant Vail's failure to adequately investigate alternative Plan options, and these allegations are not enough to support the inference she asks this Court to make.

My review of decisions outside this jurisdiction also leads me to conclude that plaintiff fails to allege a breach of the duty of prudence.  Plaintiff's first set of allegations relate to defendant's offering more expensive share classes instead of less expensive share classes from the same issuer.  With respect to these assertions, "merely alleging that a Plan offers retail-class rather than institutional-class funds is insufficient to state a claim for the breach of duty of prudence."  *White v. Chevron Corp.*, No. 16-CV-793, 2017 WL 2352137, at *14 (N.D. Cal. May 31, 2017), *aff'd*, 752 F. App'x 453 (9th Cir. 2018) (unpublished).  In *White* the plaintiffs asserted that the fiduciaries should have offered cheaper share classes of the funds that were included among the Plan options.  The court stated that this contention was "based on the assumption that the mere inclusion of a fund with an expense ratio that is higher than that of the lowest share class violates the duty of prudence," which is untrue.  *White v. Chevron Corp.*, No. 16-CV-0793-PJH, 2016 WL 4502808, at *11 (N.D. Cal. Aug. 29, 2016).  Other courts have also rejected the theory that a fiduciary violates ERISA by offering more expensive share classes instead of less expensive share classes.  *E.g. Loomis v. Exelon Corp.*, 658 F.3d 667, 671–73 (7th Cir. 2011); *Hecker v. Deere & Co.*, 569 F.3d 708, 711 (7th Cir. 2009).  Alleging only the inclusion of more expensive share classes is not enough, and plaintiff does not allege more.

---

[1] Judge Arguello's decision differed only in that she dismissed without prejudice, instead of with prejudice, because plaintiffs sought leave to amend and had attached an amended complaint that incorporated facts learned during discovery that allegedly addressed the deficiencies.  *Id.* at *6–7.

The decisions plaintiff cites for its share class argument differ substantially from the facts here.  In both *Braden* and *Kruger*, for example, *all* of the funds provided as options were retail class shares instead of the less expensive institutional class shares.  *Braden*, 588 F.3d at 595; *Kruger v. Novant Health, Inc.*, 131 F. Supp. 3d 470, 473 (M.D.N.C. 2015).  By contrast, plaintiff only alleges that some of the funds offered by defendant Vail in its Plan (fifteen of twenty-seven) could have been replaced by identical lower-cost options—the twelve others were presumably lower-cost options that participants could opt for.  ECF No. 30 at ¶38.  In *Terraza* the court refused to dismiss share class claims when defendants did not secure the least expensive share classes available.  *Terraza v. Safeway Inc.*, 241 F. Supp. 3d 1057, 1075–76 (N.D. Cal. 2017).  However, the court wrote that "Defendants' failure to offer the investment option with the lowest expense ratio is not enough, on its own, to plausibly state a claim for breach of the duty of prudence."  *Id.* at 1076.  The court denied the motion to dismiss because it found plaintiff alleged "more than that."  *Id.*  Most notably the court pointed to a potential inappropriate relationship and influence over the fiduciary's decision-making—at the time the Plan included challenged JP Morgan funds, JP Morgan Chase Bank was the Plan's trustee, and JP Morgan Retirement Plan Services served as recordkeeper for the Plan.  *Id.*  Plaintiff makes no such assertions about an inappropriate relationship here, leaving her only with bare allegations that defendant included retail shares instead of institutional shares for some funds.

Plaintiff's allegation that defendant was unjustified in choosing actively managed funds over passively managed funds is equally unavailing.  First, and most importantly, plaintiff fails to mention that defendant *did* offer passively managed funds among its Plan options.  ECF Nos. 30 at ¶43 (listing only fourteen of the twenty-seven options); 35-1; 35-3.  I agree with defendant

that plaintiff's complaint reads as suggesting that actively managed funds can *never* be a prudent

choice, which cannot be true.  Many courts have concluded that choosing actively managed

funds per se over actively managed funds is not a breach of fiduciary duty.  In *Meiners* the

Eighth Circuit rejected a claim nearly identical to plaintiff's allegations that compared actively

managed Wells Fargo funds to passively managed Vanguard funds.  *Meiners v. Wells Fargo &*

*Co.*, 898 F.3d 820, 823 (8th Cir. 2018).  In *Rosen* the court rejected plaintiff's claim for fiduciary

breach based on plan expense.  There, similar to here, the Plan had a mix of actively and

passively managed funds—of fourteen, eleven were actively managed and three were passively

managed—and the court emphasized that the Plan thus included several alternatives to the

higher-cost actively managed options.  *Rosen v. Prudential Ret. Ins. & Annuity Co.*, No. 3:15-

CV-1839 (VAB), 2016 WL 7494320, at *15 (D. Conn. Dec. 30, 2016), *aff'd*, 718 F. App'x 3 (2d

Cir. 2017) (unpublished).

Plaintiff relies on *Brotherston* for the proposition that her allegations regarding passively

versus actively managed funds state a plausible claim.  In that case plaintiffs alleged that

defendants breached their fiduciary duties by "offering participants a range of mutual fund

investments that included all of (and, for most of the class period, only) Putnam's own mutual

funds without regard to whether such funds were prudent investment options."  *Brotherston v.*

*Putnam Investments, LLC*, 907 F.3d 17, 23 (1st Cir. 2018), *cert. denied*, 140 S. Ct. 911 (2020).

However, the First Circuit's opinion came only after a bench trial in which the district court

found that "the entire portfolio of investment options . . . was selected by the use of imprudent

means."  *Id.* at 34.  Plaintiff characterizes the court's decision as holding that to favor largely

actively managed funds over passively managed funds establishes a *prima facie* breach of

prudence case.  ECF No. 36 at 12.  But in fact, the case turned on defendant consistently

including its *own* funds, which it did not prudently select or monitor, in the portfolio.  Plaintiff

makes no such allegations here about defendant Vail.

As for plaintiff's allegation that the Plan's fees were excessive, courts have held that to

establish a valid claim for excessive fees a fund must "charge a fee that is so disproportionately

large that it bears no reasonable relationship to the services rendered and could not have been the

product of arm's-length bargaining."  *Young v. General Motors Invest. Mgmt. Corp.*, 325 F.

App'x 31, 33 (2d Cir. 2009) (unpublished) (internal quotation and citation omitted).  Put

differently, "the investment must be so expensive and so flatly improper that a reasonably

prudent investor could not have selected such an option—even if hedged with safer or lower-cost

investments elsewhere in the portfolio."  *Birse*, 2018 WL 6603961, at *7.

Courts have routinely rejected arguments like plaintiff's that are based on allegations of

excessive fees.  For example, in *Hecker* the court rejected the argument that defendants breached

their fiduciary duty by selecting investment options with excessive fees.  556 F.3d at 586.  It

wrote "[t]he fact that it is possible that some other funds might have had even lower ratios is

beside the point; nothing in ERISA requires every fiduciary to scour the market to find and offer

the cheapest possible fund (which might, of course, be plagued by other problems)."  *Id.*  In fact,

"nothing in the statute requires plan fiduciaries to include any particular mix of investment

vehicles in their plan."  *Id.  Renfro*, another Seventh Circuit case, came to the same conclusion.

*Renfro v. Unisys Corp.*, 671 F.3d 314, 327–28 (3d Cir. 2011) (rejecting claims for fiduciary

breach based on excessive fees when Plan provided a "reasonable range of investment options

with a variety of risk profiles and fee rates").

*Meiners* from the Eighth Circuit is similar.  The court affirmed a grant of defendant's motion to dismiss where plaintiffs alleged that defendants failed to remove their expensive and underperforming funds from the Plan's options based on high fees.  *Meiners*, 898 F.3d at 823. Likewise, in *Rosen* the District of Connecticut granted a motion to dismiss on analogous allegations regarding costly investment options.  It noted that "general allegations regarding the cost of selected investments do not demonstrate that those investments were imprudent, or that a prudent fiduciary would have decided any differently under the circumstances, and thus they fail to state an ERISA claim as a matter of law."  *Rosen*, 2016 WL 7494320, at *14.  The menu of investment options resulted in expense ratios from 0.04% to 1.02%.  The court noted that the Plan thus offered a wider "mix and range" of offerings than those in *Hecker* and *Renfro*, in which the courts also dismissed claims for fiduciary breach based on excessive fees.  *Id.* at *15.

Plaintiff does point to other decisions that suggest it plausibly establishes an ERISA violation.  *E.g. Sweda v. Univ. of Pennsylvania*, 923 F.3d 320, 330 (3d Cir. 2019), cert. denied, 140 S. Ct. 2565 (2020).  There is no doubt that this case is a close call.  Ultimately, however, I conclude that even when taken together plaintiff's allegations fall short of a valid claim for breach of the duty of prudence.  While it is true that many of the funds defendant offered in its Plan were more expensive and underperformed alternatives, this was not true of all the Plan's offerings.  The complaint includes no direct allegations of imprudence in Vail's fund selection, retention, or management process.  Nor can I "infer from what is alleged that the process was flawed" and that Vail was an imprudent fiduciary.  *Braden*, 588 F.3d at 596.  Defendant's Plan offered a range of fund options with various costs, fee structures, and rates of return, as it is expected to do so as a fiduciary.  I therefore GRANT defendant's motion to dismiss the claim for

breach of fiduciary duty of prudence under Rule 12(b)(6).  Plaintiff has already had an

opportunity to amend her complaint once, and the Court does not believe that further opportunity

to amend would address the current deficiencies.  Nor has plaintiff urged the Court to dismiss

without prejudice or provided a newly amended complaint like in *Birse*.  The dismissal is

therefore with prejudice.

> 2.  <u>Breach of duty of loyalty</u>

In her single claim plaintiff also mentions the duty of loyalty owed by ERISA fiduciaries.

Courts addressing the duty of loyalty separately under ERISA point to 29 U.S.C. §

1104(a)(1)(A), which requires fiduciaries to act "for the exclusive purpose of providing benefits

to participants and their beneficiaries."  *E.g. Cunningham v. Cornell Univ.*, No. 16-CV-6525

(PKC), 2017 WL 4358769, at *4 (S.D.N.Y. Sept. 29, 2017).  A breach of the duty of loyalty

requires factual allegations that a defendant's actions were for the purpose of providing benefits

to himself or someone else—having that effect incidentally is not enough.  *Id.*; *Cassell v.

Vanderbilt Univ.*, 285 F. Supp. 3d 1056, 1062 (M.D. Tenn. 2018); *Sacerdote v. New York Univ.*,

No. 16-CV-6284 (KBF), 2017 WL 3701482, at *5 (S.D.N.Y. Aug. 25, 2017).  Furthermore, "a

plaintiff must do more than simply recast purported breaches of the duty of prudence as disloyal

acts."  *Sacerdote*, 2017 WL 3701482, at *5.

Here, plaintiff's allegations sound only in prudence.  ECF No. 30 at ¶¶74–81.  Plaintiff

puts forth no facts suggesting that any of defendant's actions were for the purpose of benefiting

itself.  Defendant raises this in its motion to dismiss, and plaintiff's response is a short two

sentences: "The burden of Kurtz's claims is that Vail oversaw a deeply flawed decision-making

process tainted by lack of diligence and effort. That is enough to state prima facie, and plausible,

claim." ECF No. 36 at 14.  I disagree.  Plaintiff has fallen far below the Rule 12(b)(6) standard with respect to this part of her claim.  I therefore GRANT defendant's motion to dismiss with prejudice as to the alleged breach of fiduciary duty of loyalty as well.

## ORDER

Defendant's motion to dismiss, ECF No. 34, is GRANTED.  The Court enters its final written judgment dismissing this case with prejudice.  As the prevailing party defendant is awarded its reasonable costs to be taxed by the Clerk pursuant to FED. R. CIV. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

DATED this 6th day of January, 2021.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge